GOODWIN CAR COMPANY, Respondent, *v.* AMERICAN STEEL FOUNDRIES, Appellant.

First Department December 5, 1919.

**Contract — sale — when contract of parties issue for jury — payment alleged to have been induced by fraud and duress — failure to prove fraud — recovery of money paid under protest — failure to raise objection at trial.**

The plaintiff, a corporation engaged in renting and selling a special type of dumping cars, had a contract with the defendant's predecessor, which contract was assumed by the defendant, to build a certain number of cars for the plaintiff, but the defendant afterwards refused to continue the contract owing to certain disputes as to the method of payment. The defendant had on hand certain material specially fabricated for the building of the plaintiff's cars and also material of a general character useful in the construction of such cars and submitted to the plaintiff an inventory of the first-mentioned material and offered to sell it at a certain price. After negotiations, both oral and evidenced by writings, the plaintiff agreed to buy said material at a reduced price " as per list given " to the plaintiff, but the offer of sale by the defendant was not similar to the plaintiff's acceptance as it embraced other terms and omitted certain provisions of the plaintiff's proffer so that the written evidence of the contract was not complete in itself. There was, however, an agreement that there should be a proportionate deduction from the contract price for any material shown on the list given to the plaintiff which was short, or which the plaintiff might not desire to take. The defendant refused to deliver the material unless the plaintiff paid for excess material not included

in the inventory and which was material of a general character not specially fabricated for the plaintiff's cars, which additional sum the plaintiff paid under protest. Plaintiff sues, *first*, to recover the sum paid under protest and which it was alleged was extorted from the plaintiff by fraud and duress, and *second*, to recover another sum for which the plaintiff claims it is entitled to credit for having failed to select certain materials contained in the inventory. On all the evidence, *held*, that there was no evidence of fraud or deceit or unfair dealing on the part of the defendant; that the ·sale made was based upon the inventory furnished to the plaintiff by the defendant; and that it was error for the court to hold as a matter of law that the contract of sale covered all materials on hand applicable to the construction of the plaintiff's cars regardless of whether it was specially fabricated or solely usable in such cars, and that it was also error for the court not to submit to the jury the question as to what the contract between the parties actually was, as the writings which passed between them did not constitute the full agreement.

As the defendant did not contend at trial that the plaintiff could not recover in any event because the payment was voluntarily made by it and because there was no evidence of duress, or take any exception raising such issue, the question is not before the court on appeal.

Appeal by the defendant, American Steel Foundries, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 4th day of November, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the same day denying defendant's motion for a new trial made upon the minutes.

*John Quinn* of counsel [*Justus Sheffield* with him on the brief], for the appellant.

*Duncan Edwards* of counsel [*Edwards & Bryan*, attorneys], for the respondent.

Dowling, J.:

The plaintiff is an Illinois corporation engaged in the business of renting and selling certain dumping cars of a special type known as Goodwin cars, used in railroad construction, and adapted to discharge their contents whether at rest or in motion. They were shaped somewhat like an inverted V and were unloaded by means of openings on the lower part of the sides of the car instead of by tilting, as was

the case with the other forms of dumping-car construction used at the time in question. The plaintiff had contracted with the defendant's predecessor (known as the American Steel Foundry Company) about December 1, 1900, to build certain Goodwin cars for it, and on January 9, 1901, the parties made an agreement for the building of 100 cars for the plaintiff, according to agreed plans and specifications.

The defendant, a New Jersey corporation, was organized January 26, 1902, and took over all the business and assets and assumed all the contracts of the American Steel Foundry Company, including the contract for the construction of these one hundred cars. The defendant had built thirty-five of these cars when certain disputes arose as to the method of payment, the defendant desiring cash and plaintiff wishing to pay by car-trust certificates. As the result of their disagreement and on August 4, 1903, the defendant refused to proceed further with the construction of the remaining sixty-five cars, although it had materials on hand for the construction of the same. This material was on hand at defendant's plant at Granite City, Mo., and besides the material which had been fitted, fabricated or assembled specially for the Goodwin cars and applicable to no other type of car, it also had on hand at said premises material of a general character which could be used not only in assembling and completing plaintiff's cars, but in cars of any other type and in general construction.

The defendant when it refused to proceed with the completion of the remaining sixty-five cars desired to get rid of the material on hand so far at least as it was applicable to Goodwin cars, and, therefore, after conversations between the parties, a letter was sent by defendant to plaintiff's then president as follows:

" AMERICAN STEEL FOUNDRIES.
" 74 Broadway,
" Arthur Building.

" JOSEPH E. SCHWAB,
" President.

" NEW YORK, *June* 2, 1903.

" MY DEAR SIR.— As per our conversation of yesterday, I am sending you herewith Sheets 54–66–155 to 163 inclusive

and sheet 162-A which contains complete inventory of the material we have on hand applying on Goodwin cars.

" As these sheets have been taken from an inventory of materials at this plant, I wish you would return them to me as soon as possible, as they are needed by our Accounting Department.

" You may, however, if you so desire, have a copy of same made for your own use.

" Yours truly,
" J. E. SCHWAB,

" Enclosures:                        *President.*

" To Mr. Edward L. Tilton, President

　　" Goodwin Car Company,

　　　" 96 Fifth Avenue, New York:

" Note.— As we are using portions of this material from time to time the list will be subject to slight changes.

" J. E. S."

To this plaintiff replied by the following letters:

" *June* 4, 1903.

" J. E. Schwab, Esq.,

　　" President American Steel Foundries,

　　　" 74 Broadway,

　　　　" New York City:

" Dear Sir.— We acknowledge with many thanks receipt of your favor of the 2nd inst., enclosing complete Inventory of the material on hand in Granite City, applying to Goodwin Cars.

" We shall be very glad to have a copy of the Inventory, which we will make and return to you within a day or two.

" Yours very truly,
" GOODWIN CAR COMPANY,

" C. J.                    Clarence Johnson, *Supt.*"

" W. W. C.                        *June 8th,* 1903.

" J. E. Schwab, Esq.,

　　" President American Steel Foundries,

　　　" 74 Broadway,

　　　　" New York City:

" Dear Sir.— Referring to your favor of the 2nd of June, we return herewith the Inventory of the material which you

have on hand applying on Goodwin Cars, of which we have made copy for file in this office.

 " Thanking you for the accommodation, we remain,

" Yours very truly,

" C. J.      [Signed]    GOODWIN CAR COMPANY,

" Enc.                    ...............*Supt.*"

There can be no dispute as to what the inventory of the material embraced, for it is included in full in the record and there is no doubt that what was therein enumerated was material applicable to the construction of the Goodwin cars. The various items had prices affixed, totaling $60,644.19. With this inventory in its possession and knowing that the defendant was anxious to sell the material shown thereupon and was also refusing to proceed with the manufacture of the remaining sixty-five cars, the plaintiff wrote the following letter to the defendant:

" *July 22nd,* 1903.

" Mr. JOSEPH E. SCHWAB, Pres.,

" The American Steel Foundries,

" 74 Broadway, City:

" DEAR SIRS.— Under our contract there are still sixty-five (65) cars due us. Will you please advise us as to how soon the same will be completed ready for delivery?

" Thanking you in advance for an early reply, we remain,

" Yours very truly,

" GOODWIN CAR COMPANY,

" *President.*"

Interviews took place thereafter between Taylor, president of the plaintiff, and Schwab, president of the defendant, the latter still refusing to complete the contract and inquiring why plaintiff did not buy the material that was on hand. One interview appears to have taken place about August 4, 1903, and during it, or within a short time thereafter, defendant's president said that unless plaintiff bought the material it would be sold as scrap to the Illinois Steel Company. Further conversations took place, as the result of which a letter was written by defendant's president to plaintiff's president as follows:

" American Steel Foundries.
" 74 Broadway,
" Arthur Building.
" Joseph E. Schwab,
" President.

" New York, 12*th August*, 1903.

" My Dear Mr. Taylor.— Referring to phone conversation this morning in regard to the balance of material we have on hand applying on Goodwin Cars at Granite City Works, I beg to advise that our inventory of this material taken sometime ago and checked up at cost price as noted thereon, amounts to $61,675.28.

" In order to dispose of this material I am willing to make a reduction in price equaling a total of $45,000 for the entire lot. This you will note is equal to a little more than 25% reduction.

" I trust in view of this liberal reduction in price and the value of the material to your people you may see your way clear to take this material off our hands. Of course, in case there is any shortage from our inventories we shall make according reduction to you.

" Yours truly,
" J. E. SCHWAB,
" *President.*

" To Mr. William H. Taylor, President
" Goodwin Car Company,
" New York City."

Further negotiations ensued between the parties and about September tenth Taylor told Schwab that plaintiff would pay $40,000 for the materials and Schwab said he would accept it. At this time plaintiff was desirous of getting its remaining cars built, as it had an opportunity of renting either fifty-nine or sixty-nine of them to the O'Rourke Construction Company in connection with the Grand Central Terminal work in New York city, and Taylor so advised Schwab. Taylor said that he told Schwab that plaintiff would pay the defendant $40,000 for all Goodwin material on hand at the Granite City yards, and that Schwab said he would accept the offer, and it was subsequently reduced to writing. Taylor insists that the conversations with Schwab had to do with the price to be paid for the purchase of all the materials pertaining to Goodwin

cars that defendant had left on hand at Granite City, and that Schwab said that the defendant would sell plaintiff all of that material. Taylor also testified that he saw that the plaintiff would not expect to pay for any material it did not take and would want a proportionate allowance for that, to which Schwab agreed. Taylor insists that these negotiations had no reference whatever to any inventory and that the same never was mentioned during their talks. Then on September fourteenth plaintiff wrote the following letter:

" *Sept.* 14, 1903.

" Mr. JOSEPH SCHWAB, Pres.,

" American Steel Foundries,

" 74 Broadway, New York City:

" DEAR SIR.— We hereby accept your offer to sell us the material on hand at Granite City as per list given us (amounting in the aggregate to about $62,000.00) for the sum of $40,000.00 F. O. B. cars at Granite City. The material to be loaded promptly by your company under the supervision of our representative, the understanding being that practically all of the standard material as shown on the list you sent us is to be supplied and that wherever there is a shortage of any of the materials shown on the list, or there is any material which we do not take, the same is to be deducted from the above amount of $40,000.00 at the same relative price at which it was charged to us.

" In compliance with your promise to the writer, will you please see that immediate arrangements are made for a force to load this material on cars ready for shipment. Advise us as to the date you will be ready to commence loading so that we may have our inspector there, and that we may also notify you as to the railroad over which we wish to ship.

" We would suggest that it might be well for you to promptly send to our office at 96 Fifth Avenue, a copy of the latest list you had sent you from the plant. If you will send it to us in duplicate, we can send a copy of same to our representative.

" Yours very truly,

" GOODWIN CAR COMPANY,

" WILLIAM H. TAYLOR, *President.*

" P. S.— Terms net cash on delivery of material."

It will be noted that in this letter the plaintiff accepts the defendant's offer to sell the material on hand at Granite City as per list given defendant, amounting in the aggregate to about $62,000. No such offer to sell is in evidence, nor was such an offer given in writing. The offer referred to which the plaintiff undertakes to accept is an oral offer arising out of the conversations between Taylor and Schwab, and, therefore, at the outset, it may be noted that this alleged contract is not complete in itself, referring as it does to a prior oral offer. Then on September sixteenth the defendant sent the following letter to the plaintiff:

" New York, *Sept.* 16, 1903.
" American Steel Foundries.
" 74 Broadway,
" Arthur Building.

" Joseph E. Schwab,
     " President. ·

" My Dear Mr. Taylor.— I have your letter of the 14th accepting our proposition for all the material we have on hand at Granite City Works for the sum of forty thousand dollars ($40,000.00) F. O. B. cars our works, terms cash on delivery.

" Of course, in accepting this proposition, it is clearly understood that this clears up all old accounts or contracts which you may have had with the American Steel Foundry Company or the American Steel Foundries.

" We will arrange to load this material very promptly under your supervision, and am having a list prepared in duplicate, as per your request, which I hope will reach you by tomorrow.

" I will also have our people in St. Louis notify you when they are ready for your inspector to be on hand. I expect to be absent from the City for a week or ten days but this matter will have every attention.

" Yours truly,
     " J. E. SCHWAB,
          " *President.*"

This, it will be seen, is not in terms a duplicate of the plaintiff's acceptance but embraced other terms and omits certain

provisions of the plaintiff's proffer. Nor does this letter of the defendant specifically limit the sale to the material on hand as per list as does the plaintiff's letter. It is clear, however, from the two letters and from the oral testimony, that plaintiff was buying certain material listed at nearly $62,000, for the sum of $40,000, and that it was to receive a proportionate reduction from that contract price for any material shown on the list which was short, or which plaintiff might not desire to take. Also, this agreement disposed of the contract for the building of the remaining sixty-five cars. But what is now the subject of controversy between the parties is whether the defendant was to sell to plaintiff for $40,000 all material of every kind on hand in the premises at Granite City, Mo., which could be used in the Goodwin cars, whether specially applicable to it or not, or whether defendant only sold to plaintiff for the price of $40,000 the material listed in the inventory, or so much thereof as plaintiff might conclude to take at a proportionate reduction in price, with a like reduction in case of any shortage between the list and the goods actually on hand. In the letter of September sixteenth the defendant referred to a list of material which it was having prepared in duplicate and promising to send such a list to the plaintiff. This it did, inclosed with the following letter of September sixteenth:

"AMERICAN STEEL FOUNDRIES.
　　"74 Broadway,
　　"Arthur Building.
"JOSEPH E. SCHWAB,
　　"President.

　　　　　"NEW YORK, 16*th September*, 1903.

"MY DEAR MR. TAYLOR.— As per your request, I have pleasure in enclosing you herewith two copies of the list of material as furnished this office from our Western Office, which we have sold you.

"Confirming phone conversation had with Mr. Utech this afternoon, I also beg to advise that we have instituted inquiries from our Western Office endeavoring to obtain for you the best freight rates possible from St. Louis to Detroit.

As soon as we have this information, we will be glad to forward it to you promptly.

"Yours truly,
"J. E. SCHWAB,
"Enclosures.                                    *President.*
"To Mr. WM. H. TAYLOR, President,
"Goodwin Car Company,
"96 Fifth Avenue, N. Y."

When the plaintiff received this letter it found that two sheets were missing. This new list was practically a duplicate of the inventory furnished in June and varied in no material respect therefrom. Evidently it was based upon the old inventory and was so understood by both parties, and the absence of the two sheets might at once be detected by comparison with the old inventory, a copy of which the plaintiff still had on hand. In any event the missing sheets were furnished by defendant to plaintiff on September 23, 1903, inclosed with the following letter:

"AMERICAN STEEL FOUNDRIES.
"74 Broadway,
"Arthur Building.
"JOSEPH E. SCHWAB,
"President.
"NEW YORK, 23rd *September,* 1903.
"MY DEAR MR. TAYLOR.— I have pleasure in enclosing you herewith two sheets in duplicate of those omitted in our copy of the report of material on hand at Granite City for Goodwin cars.

"As you state, this was occasioned by an error in making the transcript and I trust that the list is now complete.

"Yours truly,
"JOHN J. UTECH,
"Enclosures.               *Secretary to the President.*
"To Mr. W. H. Taylor, President,
"Goodwin Car Company,
"96 Fifth Avenue, N. Y."

The material at Granite City was inspected by plaintiff's representative and loaded on railway cars thereat for ship-

ment.  Taylor testified that plaintiff selected no goods but took all there was at the plant.  In its second cause of action, however, plaintiff claims it failed to take material inventoried at $15,013.93, for which it is entitled to a deduction of $9,901.69.  Defendant had loaded the cars at the plant and they had been sent on to Detroit, but defendant would not give an order to deliver the cars to plaintiff's representative, the American Car and Foundry Company, until the full amount of $50,450.47 had been paid.  The excess over $40,000 (amounting to $10,450.47) was for extra material not included in the inventory, and charged for at a discount of thirty-five and fifteen one-hundredths per cent from the price at which it was carried by defendant.  It was material which had not been fabricated specially for Goodwin cars nor solely applicable thereto, but it was material of a general character applicable for use on cars of any kind or in fact for any general construction or machinery purpose.  The total invoice list of the material shown in the original inventory was $60,644.19, but by Schwab's letter of August 12, 1903, the inventory when checked up at cost totalled $61,675.28.  The total value of all the material selected by plaintiff at Granite City was $77,795.14. There are certain minor differences and discrepancies in the computation of values between the invoice prices and the testimony of an expert witness for the plaintiff, but they are not material to the controversy.  The figure of $61,678.38 was the basis of computation upon the trial and under it any discount to which plaintiff was entitled for any material missing or not taken was thirty-five and fifteen one-hundredths per cent based upon the ratio between $40,000 and $61,675.28. Plaintiff not only declined to pay for the material selected by it and not shown on the inventory, but it claims that it also declined to take material invoiced on the list at $11,562.59 and claims a proportionate reduction therefor from the purchase price of $40,000, amounting to $7,498.34.  This represents a reduction from the original claim for $9,901.69, as set forth in the complaint and it was amended to the reduced amount upon the trial.  Based upon the inventory prices the defendant demanded that the plaintiff should pay the sum of $10,450.47 for material selected by it but not shown on the

inventory or list and this amount was finally paid by the plaintiff under protest and so received by the defendant. It should be said that the amount of $10,450.47 was arrived at by making the same reduction of thirty-five and fifteen one-hundredths per centum from the price at which the material was carried on the defendant's books. With the material it selected and finally paid for, plaintiff built sixty cars, leaving a deficiency of five cars from the original number contracted for.

The plaintiff sues upon two causes of action: First to recover the sum of $10,450.47 paid under the circumstances referred to, which the complaint avers " was paid to defendant by plaintiff under protest, and was received by defendant under protest, with full knowledge of the claim of plaintiff as herein set forth." This first cause of action contains allegations that defendant falsely and fraudulently represented to defendant that the inventory referred to contained all the material it had belonging to Goodwin cars; that the inventory was false and fraudulent and was part of a fraudulent scheme whereby to induce plaintiff to enter into a contract; and that defendant devised and carried out a fraudulent scheme against the plaintiff, whereby having induced plaintiff to purchase all the material on hand, it compelled the plaintiff to pay an additional sum of $10,450.47 by threat and duress. There is no basis shown for any claim of fraud, deceit or unfair dealing on the part of the defendant. So far as the plaintiff's right to recover is concerned, it must find support in its theory of what was the agreement between the parties, and not in such vague charges as it has made, unsupported by any proof.

The second cause of action is to recover the sum of $9,901.69, being the amount for which plaintiff claims it is entitled to credit for having failed to select material of the inventory value of $15,013.93. This amount was reduced on the trial to $7,498.34.

The defendant denied that the agreement was as claimed by the plaintiff. Schwab testified that what the defendant was selling was the material specially ordered for Goodwin cars; that the inventory of such material was made and submitted to plaintiff; that the agreement was based solely upon the inventory; and that it was because the inventory was

the basis of the sale that the condition was made that if the inventory was not correct in any respect, there should be a deduction proportioned to the ratio between the total amount shown on the final list of $61,675.28 and the purchase price of $40,000, and that for the same reason if there was material on hand not shown on the inventory it should be paid for on the same basis.

There is no doubt that both parties believed the inventory was a complete list of the material specially applicable to Goodwin cars and both acted in good faith in reliance upon the same. Nor is there any doubt that the price of $40,000 finally agreed upon was made with reference to the total inventoried list price. Both parties in all their transactions acted upon the strength of the inventory and all their computations and negotiations were based thereupon. Plaintiff at the present time cannot figure any right to recover either for overpayment or for allowances save upon the basis of that inventory. And yet the claim is made that the agreement for the purchase of the material was not based upon the inventory nor limited to the goods shown therein, but that plaintiff was entitled to all the material of every kind which could possibly be used in the construction of its cars and which was at the time on the premises at Granite City. Upon this theory the learned trial court held as a matter of law that the contract between the parties was one for the sale of all material on hand at the Granite City plant of the defendant which could be used in the construction of Goodwin cars. The precise language of the court was that " this defendant agreed to sell to the plaintiff corporation, the Goodwin Car Company, all the materials which had been provided for the manufacture of these cars for the sum of $40,000, and thereupon the material was loaded upon cars." Exception was duly taken to the court's charge. The court was then asked to charge by the defendant's counsel: " The question raised by the defendant on this trial is whether it was a contract for the sale of all the material on hand at the Granite City plant applicable to the construction of Goodwin cars, or whether it was a sale of material shown in the inventory." The court then said: " I realize that, and I decline to charge as requested." To this, exception was taken. The defendant's counsel later

made the following request: " I ask your Honor to submit to the jury the question of whether this was a contract for the purchase of all of the material on hand with the defendant at the Granite City plant, or whether it was a contract for the purchase of material shown on a certain inventory. The Court: I decline to so charge."

I believe that it was error for the court to hold as a matter of law that this was a contract between the parties for the sale of all material on hand at Granite City applicable to the construction of plaintiff's cars regardless of whether it was specially fabricated or solely usable in such cars. I also think that it was error to decline to submit to the jury the question of what the contract between the parties actually was — whether it was a contract for the sale of all the material at defendant's plant or one for the sale of such material as was shown by the inventory. The letters which passed between the parties do not constitute the full agreement. The letter which plaintiff wrote on September fourteenth purports to be an acceptance of an oral offer. That oral offer thus accepted must be a matter of independent proof, and testimony as to what it was has been received from both sides. The defendant's letter of September sixteenth is not an unqualified acceptance of all the terms in the plaintiff's letter, but also requires and has been given oral testimony to interpret it. This letter of the defendant refers to another list which was being prepared at the plaintiff's request and which, taken in conjunction with the fact that negotiations between the parties were based on a prior written inventory differing from this second list in no material respect, furnished strong and persuasive support for defendant's contention that the entire transaction was a sale of the goods shown on the inventory and not a sale of all material on hand, whether appearing upon the inventory or not. If the plaintiff is correct in its theory, it could have refused to take any part of the goods shown on the inventory, but claimed all the extra material outside the inventory, for it would have been entitled to an allowance from the contract price ($40,000) of the listed value of the inventoried property ($61,675.28) less the agreed reduction of thirty-five and fifteen one-hundredths per cent which would also amount to $40,000, thus leaving nothing to

be paid. It would thus have been entitled to all the extra material outside the inventory without payment. A contract producing such a result should be established by something more than inference, and when its existence is disputed, it should be sustained by adequate proof, to the satisfaction of a jury. -

I believe that the basic error consists in treating this agreement evidenced by the letters which passed between the parties as a complete contract between them, which as a matter of law the court was justified in interpreting and enforcing, whereas the contract was one partly oral and partly in writing, and requiring the action of the jury in order to determine what its terms really were. Nor should it be forgotten that there is absolutely no proof of any fraud or misrepresentation or deceit on the part of defendant, as the learned trial court expressly charged.

A contention is now made that plaintiff cannot recover in any event, as the payment of $50,450.47 was voluntarily made and there was no evidence of duress. (*Boss* v. *Hutchinson*, 182 App. Div. 88.) But this point was not urged in any way upon the trial, nor does it arise by reason of any objection or exception in the record. The complaint alleged that the payment was made by plaintiff under protest, and was received by defendant under protest, with full knowledge of the claim of plaintiff. The answer admitted that defendant refused to deliver certain material to plaintiff, not shown in the inventory, until it received payment therefor, and that plaintiff paid the sum of $10,450.47 for said additional material under protest. Plaintiff's testimony was that defendant would not allow any of the cars to be unloaded and the material delivered to plaintiff, until the full amount of $50,450.47 was paid. This applied to the inventoried material, as well as to that outside the inventory, and was a refusal to allow plaintiff to receive what it undoubtedly was entitled to receive on payment of $40,000 (the inventoried material) unless an additional payment of $10,000 was made. It does not appear that the extra material was in separated cars or capable of being separated from the inventoried material. Defendant's president admitted that the payment was made after the shipment had been " held up " until the payment was made

and that plaintiff's president had protested against the demand for the extra money.

When the amount was finally paid by plaintiff, it was pursuant to the following letter:

" New York, *Oct.* 28, 1903.

" AMERICAN STEEL FOUNDRIES,

" Joseph E. Schwab, Pres.,

" New York City:

" GENTLEMEN.— As advised you yesterday, your Company is not entitled to the amount demanded by them in excess of the $40,000 agreed upon as the purchase price for all the Goodwin Car material which was at your Granite City works on September 14, 1903, and in making payment of such excess to your Company we do so under protest and without prejudice to any of our rights, as we need the material at this time to enable us to fulfill contracts made by us based on our contract with you for this material.

" Very truly yours,

" GOODWIN CAR COMPANY,

" WILLIAM H. TAYLOR,

" *President.*"

The record shows that the case was tried upon the basis of the theories of the respective parties as to what the agreement before them was. When defendant's trial counsel moved to dismiss the first cause of action at the close of plaintiff's case, it was upon the ground that under the contract between the parties plaintiff had agreed to buy, and the defendant to sell, only the materials shown in the inventory, and, therefore, as such counsel claimed, "plaintiff has no right to a refund of this money, paid under protest." No contention was then urged that the payment was a voluntary one, which plaintiff could not recover back from defendant. Nor was the question raised at the close of the entire case. The court had charged that plaintiff's president had said to defendant's president that if he did pay the sum demanded, he would pay it under protest. No request to charge as to the nature of the payment was made, nor was there any suggestion that there was any issue to be decided by the court as to whether this was a voluntary payment as a matter

of law, nor any request to submit the issue to the jury as one of fact. On the contrary, the defendant sought to have submitted to the jury only the issue as to which it had addressed itself throughout the trial — that this was a sale only of the materials shown on the inventory. Therefore, the question of whether this was a voluntary payment or one made under duress is not before us for decision.

The judgment and order appealed from will, therefore, be reversed and a new trial ordered, with costs to the appellant to abide the event.

CLARKE, P. J., SMITH, PAGE and PHILBIN, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.