In the Matter of the Summary Proceedings of 507 MADISON AVENUE REALTY CO., INC., Appellant, *v.* NICHOLAS MARTIN, Respondent, Impleaded with LILLA LARSON and Others, Defendants.

First Department, March 3, 1922.

Landlord and tenant — leases — covenant in lease for its cancellation under certain conditions held to be covenant running with land — covenant in lease running with land and covenant personal to lessor distinguished — tenant cannot question landlord's title for first time on appeal nor after admitting title in pleadings.

A covenant in a fifteen-year lease, made by a landlord nearly seventy-three years of age, which provided that after seven years of the term had expired, in case of a sale of the property, the landlord might terminate the lease upon giving the tenant ninety days' notice and paying him $5,000, is a covenant running

with the land, although no mention is made of the heirs and assigns of the landlord, especially where the tenant in a letter to the successor in title to the premises evidenced his understanding that the covenant was operative and available to the successor.

*It seems*, that a covenant in a lease which affects the use, value and enjoyment of the premises is a covenant running with the land, while one which is beneficial to the lessor without regard to his continuing the owner of the premises is a collateral covenant personal to the lessor.

A tenant cannot question his landlord's title in a summary proceeding to dispossess for the first time on appeal.

Admission of the landlord's title by the tenant in the pleadings in a summary proceeding precludes the tenant from questioning the landlord's title at a later stage of the proceeding.

APPEAL by the plaintiff, 507 Madison Avenue Realty Co., Inc., from an order and determination of the Appellate Term of the Supreme Court, First Department, entered in the office of the clerk of the county of New York on the 9th day of June, 1921, affirming a final order of the Municipal Court of the City of New York, Borough of Manhattan, Ninth District, in summary proceedings dismissing the petition of the plaintiff and awarding the tenant possession.

*Myers & Sherwin [Francis M. Scott* of counsel], for the appellant.

*Arthur S. Luria [George L. Ingraham* of counsel], for the respondent.

MERRELL, J.:

This proceeding was instituted to recover the possession of leased premises. The Municipal Court, in which the summary proceedings were instituted, made a final order dismissing the landlord's petition and awarding the possession of the premises to the tenant. An appeal was taken to the Appellate Term, where the final order of the Municipal Court was affirmed. This appeal is by the landlord from such determination of the Appellate Term.

The premises in question are situate at No. 540 Madison avenue, borough of Manhattan, New York city, and are occupied by the defendant Nicholas Martin, as tenant. The proceeding was to remove said tenant upon the ground that he held over after the expiration of his term. By consent the proceeding was discontinued at the trial as against the undertenants, occupants of different parts of the demised premises in the upper floors thereof for living purposes. Martin, the respondent herein, is in the occupation of the ground floor of the premises for business purposes. This appeal involves alone the construction of the lease under which the tenant holds. By consent of the parties, no questions are raised under the statutes of 1920 known as the " Housing Laws."

The lease to the tenant, respondent, was executed in writing on or about December 19, 1912, by Simeon J. Drake, who then

owned the premises, which consist of a four-story and basement brown stone front building with a brick extension thereto. The tenant, under said lease, entered into the possession of the premises and still remains in possession thereof. Drake, the original lessor, died on October 6, 1914, leaving a will wherein he named Henry B. Browne, Craig F. R. Drake and Simeon J. Drake, Jr., as executors. This will was admitted to probate and letters testamentary thereon were duly issued to said executors, who thereafter qualified and entered upon the discharge of their duties. On or about August 11, 1915, the said executors, under the power of sale contained in the will of Simeon J. Drake, deceased, conveyed the premises, subject to said lease, to the Five-Forty Madison Avenue Corporation, and on March 18, 1920, the last-mentioned corporation made a contract for the sale of said premises to the 507 Madison Avenue Realty Co., Inc., the petitioner and appellant herein.

In and by the terms of said written lease made by Simeon J. Drake, deceased, to the tenant, respondent, Nicholas Martin, it was provided that the leased premises were to be altered and repaired for the use of the tenant according to plans and specifications to be prepared by an architect selected by the said landlord, which plans and specifications were to be approved by both the tenant and the landlord; and that such repairs and alterations should be carried out by a contractor employed for that purpose by the tenant and under his direction, but subject to the supervision of an architect employed for that purpose by the landlord. It was further provided that the cost of such repairs and alterations should be paid by the landlord upon the certificate of the architect to the extent of $5,000; and that if the expenditure in effecting such repairs and alterations exceeded $5,000 such repairs and alterations should nevertheless be carried out and completed in accordance with such plans and specifications and paid for by the landlord; and that six percentum on the amount of such excess should be annually added to the amount of rent during the term of the lease and apportioned in monthly payments and paid by the tenant in advance on the first day of each and every month during the term of said lease.

The lease was for a fifteen-year term, commencing May 1, 1913, and ending May 1, 1928. The repairs and alterations contemplated by the lease were effected, and on or about the 13th day of January, 1915, Drake, the lessor, having died on October 6, 1914, his executors, as such, entered into a written agreement with the tenant, Martin, supplementary to said lease, wherein the provisions of said lease with relation to repairs and alterations upon said leased premises were recited, and wherein it was further recited that the amount

in excess over $5,000 of the cost of making such alterations provided in said lease had been ascertained and agreed upon by said landlord in his lifetime and the tenant, but had never been reduced to writing, and it was thereby and therein expressly agreed between said tenant and said executors that the amount of the cost of said alterations and repairs provided for in said lease in excess of $5,000 was the sum of $6,900, and that interest at six percentum, to wit, the sum of $414 per year should be added to the rent in said lease reserved, and paid in equal monthly installments of $34.50, each and every month during the term of said lease, in addition to and together with the rent therein specifically reserved; and in said written agreement between said tenant and the executors aforesaid it was stated to be expressly understood and agreed that the instrument which they then executed was for the purpose only of stating the agreement of the parties as to the amount of said expenditure and to formally declare the same, and not in any way to alter, vary or affect any of the provisions of the original lease.

The written lease under which the tenant, respondent, is in possession of said premises, by its 12th clause, provides as follows:

" 12th. Said Landlord reserves the right to terminate this lease and the term thereof at any time after May 1, 1920, in case of a *bona fide* sale of the property upon giving 90 days' notice in writing to said tenant, addressed to said demised premises, of his intention so to terminate the same, and this lease and the term thereof shall cease, determine and end at the expiration of 90 days from the day when such notice is given. And thereafter said Landlord may re-enter upon and take possession of the demised premises and every part thereof either by force or otherwise without being liable to prosecution or damages therefor and have and enjoy the said premises as of their former estate free, clear and discharged of this lease and of all rights of the Tenant hereunder. In the event of the cancellation of this lease in the manner hereinbefore provided, the Landlord shall pay to the said Tenant as consideration for the surrender of the said premises the sum of Five thousand ($5,000) Dollars."

On or about May 3, 1920, the said Five-Forty Madison Avenue Corporation served upon the tenant, Martin, ninety days' notice in writing, addressed to the tenant at the demised premises, of its intention to terminate the lease in pursuance of paragraph 12th thereof, above quoted. It is conceded by the tenant that he received said notice on the day of the date thereof, May 3, 1920. Thereafter, by deed dated May 5, 1920, and recorded June 24, 1920, in pursuance of its contract of March 18, 1920, the said Five-Forty

Madison Avenue Corporation conveyed the said premises to the petitioner herein, 507 Madison Avenue Realty Co., Inc., and thereafter and on June 22, 1920, the said Five-Forty Madison Avenue Corporation formally assigned its said lease and said supplementary agreement to said petitioner.

The facts, as above set forth, are without dispute. Was the covenant giving the landlord, Simeon J. Drake, the right to cancel the lease upon a *bona fide* sale of the property personal to him, or was it a covenant running with the land and attaching to the reversion thereof and available to the present owner for the purpose of terminating the lease and removing the tenant, respondent, from the premises? Within the narrow compass of the foregoing question is embraced the controversy upon this appeal. Upon the trial in Municipal Court, the tenant offered no testimony, except the deposition of the broker, who negotiated the lease, in respect to alleged conversations between the parties prior to the making of the lease, and which testimony was excluded by the trial court. There is no dispute but that the giving of the formal notice by the present owner of the premises, the petitioner herein, was in conformity with the provisions of the lease, and it is not disputed but that the petitioner offered to pay to the tenant the sum of $5,000, as provided in said 12th clause of the lease, upon the service of the notice terminating the same. Said notice having been given, it limited the tenant's estate and worked an expiration of the lease ninety days after the notice was given. Assuming the soundness of what I have stated, after the expiration of said ninety days' period, the tenant held over after expiration of his term, and summary proceedings were properly invoked for his removal. (*Miller* v. *Levi*, 44 N. Y. 489.)

The petition was dismissed herein by the learned trial court upon the theory that the covenant contained in the 12th clause of the lease was personal to the landlord and only enforcible by him (114 Misc. Rep. 315), and right there lies the crux of the question before us. Was this covenant personal to the landlord or did it attach to the realty and follow the reversion still limiting the rights of the tenant? At the time of granting this lease, the original lessor was nearly seventy-three years of age, and it is certainly reasonable to suppose that the landlord and tenant, at the time of entering into the lease, containing the said provision for its termination after the seven-year period, intended such provision as a covenant running with the land, which might be exercised by others who might succeed to the landlord's title by the death of the landlord or otherwise. It would be unreasonable to assume that they contemplated at that time that a man of the age of seventy-three years would be so

certain of living seven years longer that the privilege to cancel the lease after the expiration of seven years would be of great benefit to him.   Unquestionably the landlord and tenant understood at the time that this provision in the lease might be availed of, not only by the landlord, but by his successors and assigns.   The rights of the tenant were amply protected by the covenant that in case such option be exercised by the owner of the premises, the tenant should be paid the sum of $5,000.   Under all the circumstances, I cannot but believe that the provision in question was a covenant running with the land and inured to the benefit of the successors in title of the original landlord.   The right to thus terminate the lease was a valuable right attaching to the lease itself.   It seems to me the real test by which we are to determine whether the right to terminate the lease was a covenant running with the land or merely a provision for the benefit of the lessor and personal only to himself, is as to whether that provision was alone beneficial to the original landlord, regardless of his continued ownership of the property, or whether such a provision was beneficial to the reversioner as such.   The rule is well stated in McAdam on Landlord and Tenant (4th ed. p. 418) as follows: " There are certain principles, aside from tenure, by which a covenant may be tested in order to determine whether it is merely personal or attached to the realty.   In *Vernon* v. *Smith* (5 Barn. & Ald. 11) Best, J., said: ' By the terms collateral covenants, which do not pass to the assignee, are meant such as are beneficial to the lessor without regard to his continuing the owner of the estate.   This principle will reconcile all the cases.'   The same judge in *Vyvyan* v. *Arthur* (1 Barn. & Cress. 417) said: ' The general principle is that if the performance of the covenant be beneficial to the reversioner, in respect to the lessor's demand, and to no other person, his assignee may sue upon it; but if it be beneficial to the lessor without regard to his continuing owner of the estate, it is a mere collateral covenant upon which the assignee can not sue.' "

The case of *Hadley* v. *Bernero* (97 Mo. App. 314) seems directly in point.   It was there held that a stipulation providing for the cancellation of a lease and a sale of the premises was a covenant running with the reversion and available to the grantee of the property.   It was claimed in that case that such covenant was personal to the original lessor and was to be exercised by him alone and was not available to his grantees.   Reviewing such claim, the court said: " Covenants which affect the use, value and enjoyment of the premises, whether they relate to physical changes to be made thereon, or the use of the term or of the fee, go with both the reversion and the land; while stipulations in leases by which the

parties to those instruments bind themselves to do acts which in no way affect the use or enjoyment of the premises are merely personal obligations between themselves."

In the case at bar there can be no question but that the covenant permitting the termination of the lease ran with the land and became available to any subsequent grantee of title. The privilege of canceling the lease was for the benefit of whoever might own the land at the time such cancellation was desired. Can there be any question that had Drake, the original lessor, parted with title to the premises prior to the expiration of seven years, such act would have terminated his interest in the premises, and would have ended his right to cancel the lease? Can it be reasonably claimed that, in the contemplation of the parties to the lease, the right to terminate it under the 12th clause was likewise at that time to end? I think not.

A covenant in a lease providing for a renewal of the lease by the tenant is a covenant running with the land inuring to the benefit of the assignee of the lease. (*Kolasky* v. *Michels*, 120 N. Y. 635.) If a covenant providing for the renewal of a lease, and which, in effect, is an agreement to extend the term of the lease, runs with the land and is available to an assignee, I can see no reason why the corresponding covenant giving the owner of the reversion the right to curtail the term and repurchase the unexpired portion thereof for so substantial and stipulated a consideration as $5,000 should not also be held to run with the land and be available to an assignee or grantee of the reversion.

It is suggested in support of the final order of the Municipal Court that under the terms of the lease the heirs and assigns of the original lessor are not mentioned. I do not think there is any force to this position. When the petitioner became the owner of the fee, it took the same subject to the existing lease, and there can be no question of its right to institute summary proceedings to regain possession of the premises, providing the lease has terminated. Section 223 of the Real Property Law provides: " The grantee of leased real property, or of a reversion thereof, or of any rent, the devisee or assignee of the lessor of such a lease, or the heir or personal representative of either of them, has the same remedies, by entry, action or otherwise, for the nonperformance of any agreement contained in the assigned lease for the recovery of rent, for the doing of any waste, or for other cause of forfeiture as his grantor or lessor had, or would have had, if the reversion had remained in him."

The effect of such statute is to give to the owner of the reversion as grantee through mesne conveyances from the original lessor all

of the rights which his grantor had in the premises and in the lease. (*Proctor Troy P. Co., Inc.*, v. *Dugan Store, Inc.*, 191 App. Div. 685. See, also, *Kernochan* v. *Murray*, 111 N. Y. 306.)

Furthermore, it seems to me that the tenant, by his acts, has recognized the continuance and force of the covenant in question. On February 5, 1920, shortly before the expiration of the seven years when the privilege of terminating the lease became available, the tenant, respondent, wrote the Five-Forty Madison Avenue Corporation, which had then acquired title and was the owner of the premises, apparently seeking a waiver of the cancellation clause in the lease for the balance of his term, as follows:

*" February 5th*, 1920.

" THE 540 MADISON AVENUE CORP.

" 1 Madison Avenue,

" New York City:

" DEAR SIRS.— Will you kindly let us know as to what are the possibilities of having the cancellation clause in our lease waived for the balance of our term.

" Thanking you in anticipation,

" Yours very truly,

" (Sgd) NICHOLAS MARTIN."

The significance of this letter is at once apparent. It evidences the tenant's understanding at that time that the covenant was still operative and available to the Five-Forty Madison Avenue Corporation, which had succeeded to the title of said property, and constituted a practical construction of the covenant by the party to be bound by it. Such practical construction is persuasive as to the intention of the parties concerning the meaning of the instrument. (*Sattler* v. *Hallock*, 160 N. Y. 291; *Smith* v. *Taranto*, 140 N. Y. Supp. 794; affd., 158 App. Div. 912.)

It seems to me that the determination of the Appellate Term and the final order of the Municipal Court, construing the right to terminate the lease in suit as a personal one which terminated when the original lessor parted with the ownership of the real property, cannot be sustained. The covenant was one running with the land and inured to all subsequent owners of the fee during the life of the lease.

The tenant, respondent, upon this appeal for the first time questions the title of the petitioner to the leased premises or its right to maintain summary proceedings for his removal. In support of such contention it is urged that, while Simeon J. Drake, the original lessor, having died without having conveyed the premises, but leaving his said last will and testament, which was duly admitted to probate, and wherein he appointed executors to whom letters

testamentary were issued, it does not appear either that said real property was devised by said testator to his executors in trust or otherwise, or that they were empowered by his said will to sell real property which the decedent left. This belated contention of the respondent may be answered in three ways: *First,* his point is raised for the first time upon this appeal. Had he questioned the authority of the executors to convey upon the trial, they would have had an opportunity of producing the will showing their authority. (*Goodwin Car Co.* v. *American Steel Foundries,* 189 App. Div. 631; *Littlejohn & Bull, Inc.,* v. *Deutsch,* 182 id. 759.) *Second,* it is alleged in the petition, and admitted by the tenant, respondent, by his failure to deny the same in his answer, that the said executors, on or about August 11, 1915, " by virtue of the power and authority conferred upon them by the said last will and testament of said Simeon J. Drake, deceased, duly transferred and conveyed the said premises as executors of said will, subject to said lease, Exhibit A, to Five-Forty Madison Avenue Corporation." *Third,* it is expressly alleged in the answer of the tenant, respondent, " That the said Simeon J. Drake died on or about the 6th day of October, 1914, and thereafter *under the terms of his will* his executors sold the property and *duly conveyed* the same by a deed dated the 11th day of August, 1915; * * * that after such conveyance this tenant attorned to the purchaser of the said premises from the executors of Simeon J. Drake, to wit: a corporation known as 540 Madison Avenue Corporation." (Italics are the writer's.) Therefore, because for the first time raised upon this appeal and upon the pleadings, there is no virtue in respondent's attack upon the petitioner's title to the real property in question.

The determination of the Appellate Term should be reversed, with costs of this appeal, and the final order of the Municipal Court should be reversed, and a final order should issue removing the tenant from the premises, together with costs to the appellant in all courts.

CLARKE, P. J., LAUGHLIN, MERRELL and GREENBAUM, JJ., concur.

Determination appealed from and final order of Municipal Court reversed and final order directed removing tenant from the premises, with costs to appellant in all courts.