OPINION OF THE COURT
Diane A. Lebedeff, J.
The court is presented with a holdover proceeding brought upon the claim that the tenant is violating a substantial obligation of the lease for a rent-stabilized apartment by leaving the apartment vacant and unoccupied. The apartment is located at 815 Park Avenue in *672 Manhattan, in a building which is undergoing a co-operative conversion. The tenant of record, a corporation, is subject to a lease providing that a named individual, or a person succeeding to his position, shall be the only approved occupant.
Among the issues presented are whether: (1) the current owner, a co-operative corporation, may bring this proceeding based upon notices issued by the former owner; (2) actual occupancy is a substantial obligation of a tenancy; and (3) proper service upon the corporate tenant was accomplished.
BACKGROUND
Because a motion to dismiss is before the court, not all of the facts are before the court and the sequence of events is only generally revealed by the papers. The corporate tenant rented this rent-stabilized apartment in 1978, signing a two-year lease. There was no renewal and the tenancy continued under the terms of the 1978 lease.
A co-operative conversion plan was presented to the tenants. In or about September of 1982, the residential corporate tenant, as is permitted under section 61 (subd 4, par [a], cl [v]) of the amended Code of the Rent Stabilization Association of New York City, Inc. (hereinafter RSA Code),.duly designated the approved occupant as the person entitled to exercise purchase rights in relation to the shares allocated to the apartment.
In December of 1982, the grantor of the petitioner was the owner. The then owner issued a notice to cure upon the basis that the apartment was vacant and unoccupied and shortly thereafter issued a notice of termination. No claim is present here that the notices were improper and there is no allegation that the apartment has been reoccupied.
Title was taken by the co-operative corporation after the issuance of the notice of termination and fcrior to the commencement of this proceeding. It should be noted that both the right to possession and to purchase the shares are involved with this proceeding. The plan itself provides that the tenant may purchase the shares only if it prevails in this proceeding.
*673 RELIANCE UPON NOTICES ISSUED BY A PRIOR OWNER BY A CO-OPERATIVE CORPORATION
The tenant has questioned whether a co-operative corporation may commence a holdover proceeding against a rent-stabilized tenant. There is no denial that the petitioner is the fee owner of the building. It is apparent that there is no relationship other than a lessor and lessee for there is no proprietary lease and no shares have been issued for the building. Based upon such facts, the court can find no reason why this owner should be barred from commencing this holdover proceeding.
The tenant also takes issue with the fact that the new owner has relied upon a notice to cure and a notice of termination issued by the former owner. It is a well-established principle that an owner’s rights and remedies run with the land and may be assumed by a new owner. (See Real Property Law, § 223; Matter of 507 Madison Ave. Realty Co. v Martin, 200 App Div 146, 150-151.) Thus, it has been held that a new owner upon taking title may succeed to rights under a notice of termination which has not expired, under a notice of termination which has become effective, and even under a warrant of eviction if the warrant were amended to award possession to the new owner. (See, respectively, Maidman Props. v Rebuilt Mach., 54 NYS2d 263; Corning Chamber of Commerce v Bohoy, 207 Misc 789; Home Owners’ Loan Corp. v McShane, 184 Misc 579.)
Nor are there present here other defects in the notices as might occur when there is a transfer of ownership. A person with authority issued the notices. (Cf. Reeder v Sayre, 70 NY 180; Levine v Potter, 220 App Div 242; 185 East 85th St. Co. v Gravanis, NYLJ, Jan. 21,1981, p 6, col 2.) There was no defect as to the timeliness of the notices. (Cf. Brullo v Suen, 76 Misc 2d 896; Rosen v Wade, 99 Misc 2d 1114.) There was no delay in the commencement of the proceeding such that the tenant might believe the tenancy was revived. (Cf. Seegers v 302 East 45th St. Co., NYLJ, Oct. 1, 1980, p 6, col 1.)
Present here is only a simple change of title. No other defects having been urged, it is concluded that the com *674 mencement of this proceeding based upon the notices to cure and of termination issued by the prior owner is proper.
VACANCY OF APARTMENT AS GROUND FOR HOLDOVER PROCEEDING
The claim for eviction is based upon an allegation that the apartment is vacant and unoccupied. The tenant claims that such a basis cannot support this holdover proceeding.
At the outset, the language of the lease itself should be noted. It provides as follows: “The apartment will be occupied by [a named individual and his wife] only. If [the individual] is transferred the apartment will be occupied by his successor only.” The court finds that the lease restricts occupancy but does not require occupancy.
Restrictions on occupancy have been upheld when they require occupancy by an approved individual, as in Penthouse Props. v 1158 Fifth Ave. (256 App Div 685). Frequently, in publicly funded or subsidized housing, a named qualified tenant may be required to actually occupy an apartment, as in the Mitchell-Lama program. (See, specifically, RNA House v Zlatchin, NYU, Jan. 30,1975, p 2, col 1; and generally Forman v Community Servs., 500 F2d 1246, 1249.) However, the clause present here does not set forth an actual obligation to continuously occupy the apartment.
It is nonetheless urged that a vacant apartment is a breach of a substantial obligation of the tenancy in that it poses a danger to the building. Whatever may be the merits of this argument in other circumstances, the court finds this claim unpersuasive when, a building is in a cooperative conversion process. Several factors support this conclusion.
First, it appears that a tenant of record of a rent-stabilized vacant apartment has a recognized and protected status during the co-operative conversion process. Under subdivision 5 of section 61 of the RSA Code, the right to purchase shares is granted to “lessees of record of vacant or subleased apartments at the time of the offering” (emphasis added). If a tenant under the circumstances present here were to suffer the loss of the right to purchase shares *675 because of the vacancy of the apartment, the tenant would be deprived of an explicit right granted by the RSA Code. That conclusion is inescapable in this case, for the offering plan provides the tenant shall not have a right to purchase if it does not prevail in this holdover proceeding.
Second, it is common experience that apartments are often vacant during a conversion process. Landlords often withhold apartments from the rental market, leaving them empty. That practice, known as “warehousing,” was so pervasive that the Legislature by chapter 544 of the Laws of 1978 added a restriction to permit the Attorney-General to refuse approval of a conversion plan if there were an excessive number of long-term vacancies. (See General Business Law, § 352-eeee, subd 2, par [e], where the provision applicable to New York City currently appears.) Given that the owner has seemingly a recognized right under law to maintain vacant apartments, it would be difficult to find that a tenant maintaining a vacancy is creating an inherently dangerous condition under the same set of facts.
Third, it should be recognized that if there is an inherent obligation to occupy an apartment but no valid requirement that the tenant must be the occupant, then the tenant might cure by subleasing pursuant to section 226-b of the Real Property Law. It would ignore realities to state that such a request would be well received when a cooperative conversion is pending. A tenant considering subletting would do well to weigh not only the cost of litigation with the owner, but also possible risks posed by a subtenant, ranging from nonpayment to refusing to vacate at the end of the sublease to the subtenant attempting to secure the co-operative rights. In this situation, a tenant should have the opportunity to peaceably tender rent and not face the many problems and expenses which subleasing might pose.
For the above reasons, the court concludes that a mere vacancy should not serve as a basis for eviction of a tenant of record during a co-operative conversion. It should be noted that the vacancy cannot be used as a ground to infer that the apartment is not a primary residence, for the primary residence question must be raised in a different *676 fashion. As was clearly stated in Baumrind v Majid (NYLJ, March 17,1981, p 7, cols 2, 3), “An allegation that a dwelling is not occupied as a tenant’s primary residence only goes to the issue of whether a landlord is required to offer a renewal lease and is to be heard before the Conciliation and Appeals Board.” On the facts here, where the tenant has been allowed to remain for several years without a renewal lease, it is apparent that the prior owner could have filed such an application and secured such a hearing, had such been desired or warranted. Vacancy of an apartment cannot be used as an alternate means to approach the court when an administrative channel is the necessary first step to secure an eviction under subdivision E of section 54 of the RSA Code if an apartment is not a primary residence.*
It should be stressed, in concluding this analysis, that there are no allegations in the papers before the court to indicate that the vacancy has caused any difficulty or posed any hazard. The lessee of record, a corporation located within New York City, is available to supervise the apartment and may be contacted. There is no problem of access alleged, as might be needed if a pipe were to break or a similar problem occur. There is no misuse of the apartment. Present here is only a simple empty apartment.
Based upon the facts present here, the court does not find that it is a substantial breach of the obligations of a tenant when there is a failure of the designated occupant to actually occupy the apartment.
SERVICE OF PROCESS UPON A CORPORATE TENANT IN A SUMMARY PROCEEDING
RPAPL 735 governs service in a summary proceeding. Service here was upon an empty apartment by “nail and mail”, although the owner was aware of another address of the corporation.
Under such circumstances, mailing should clearly have been to the corporate address rather than to the apartment. As was described in Coulston vJKL Founding Corp. (NYLJ, March 20, 1974, p 17, cols 7, 8): “Under *677 RPAPL sec. 735(b) pertaining to service on a corporate respondent, if the latter’s principal office is other than at the property sought to be recovered, copies of the process must be mailed to such principal office * * * Lack of knowledge as to the other office locations would only become material if there were, in fact, other offices, and if such a claim were advanced in the moving papers. The integrity of [the] knowledge disclaimer is of no account if there is no actual fact in existence to call the disclaimer into question.” (Emphasis in original.) Not only is the service formally defective, but the mailing to an empty apartment when another address existed in the files of the owner was not calculated to give actual notice. It should be stressed that where the method of service is “unlikely to succeed” or is “predestined to failure”, a court may find the effort equivalent to “no attempt at all”. (Hospitality Enterprises v Fuego Rest. Corp., NYLJ, June 5, 1980, p 11, col 4, citing Palumbo v Estate of Clark, 94 Misc 2d 1.)
Because of the defect in the manner of service, the proceeding must also be dismissed.
CONCLUSION
Based upon the foregoing, the petition is dismissed. The tenant has requested legal fees pursuant to section 234 of the Real Property Law, for the lease does provide that attorneys’ fees may be awarded to the landlord. For the reasons set forth in Century Apts. v Yalkowsky (106 Misc 2d 762, 768-769), such fees may be awarded to a tenant even though the landlord did not request them. Upon consideration of the motion to dismiss and two other motions, the court determines reasonable attorneys’ fees to be $400.

 As to the impact of the primary residency issue upon co-operative conversion rights, see Wissner v 15 West 72nd St. Assoc. (87 AD2d 120) and Payn v Lyras (91 AD2d 557).