OPINION OF THE COURT
Lewis R. Friedman, J.
These four cases present an unusual question of the law of service of process under RPAPL 735 (subd 1): what does the phrase “a conspicuous part of the property sought to be recovered” mean?
The facts, as the court has found them, are relatively simple. The building currently consists of several loft tenants each of whom occupies an entire floor. The elevator to *38 three of the floors in question, 2, 5, and 9, opens directly into the loft. When tenants lock their “front” doors, the elevator will stop on the floor but the door will not open; a special key allows the cab door to retract leaving the loft’s door and its lock exposed. Each loft also has direct access to the freight elevator, the fire escape and an internal stairway. The three-day demands for rent required by RPAPL 711 (subd 2) were served as follows: on the ninth floor by posting on the interior of the locked internal stairway door and the second and fifth floors by posting on the elevator side of the shaftway doors on those floors. The eighth floor has a small vestibule outside the elevator between the loft door and the stairway door. The three-day notice was posted on the loft door. In each case there had been no response to the process server’s knocking.
The petitions and notices of petition were served differently. The fifth, eighth and ninth floors, after no answer to a knock on the door, were served by posting on the inside of the stairway door. A second copy was served on the ninth floor by putting one copy under the door. The second floor tenant was served personally when the process server walked up the stairs into a party or meeting in her loft.
The starting point for determining the validity of the service is RPAPL 735 (subd 1) which provides “Service of the notice of petition and petition shall be made by personally delivering them to the respondent; or by delivering to and leaving personally with a person of suitable age and discretion who resides or is employed at the property sought to be recovered, a copy of the notice of petition and petition, if upon reasonable application admittance can be obtained and such person found who will receive it; or if admittance cannot be obtained and such person found, by affixing a copy of the notice and petition upon a conspicuous part of the property sought to be recovered or placing a copy under the entrance door of such premises”.
There is no question of “reasonable application” raised here; the issue, therefore, is whether the posting was in the proper place, since the process servers each knocked.
The Appellate Term, First Department, in Hospitality Enterprises v Fuego Rest. Corp. (NYLJ, June 5,1980, p 11, col 4) has held: “There is of course no requirement that the *39 affixed copy actually end up in the hands of the tenant. If it has been affixed ‘upon a conspicuous part of the property * * * to be recovered,’ the server will not be penalized because a passing miscreant thereafter took it or simply destroyed it.” The problem, however, is that there are no definitions of the term “conspicuous place,” either in the legislation or the case law. “Conspicuous,” according to Webster’s New Collegiate Dictionary, means “obvious to the eye or mind” or “attracting attention.” The CPLR 308 (subd 4) equivalent to “conspicuous service” requires “affixing the summons to the door” of the premises. The broader terms of the RPAPL suggest that a posting may be on a “conspicuous place” even if it is not on “the door” of the premises. Although section 228 of the Real Property Law uses “conspicuous place” with the modifier “where it may be * * * read” surely the Legislature was not suggesting that there could be proper posting in other circumstances where the document could not be read. Reported case law is equally uninformative for interpreting the term.
Service by posting is not the best method for giving notice of the commencement of an action. In order to pass constitutional muster service must be “notice reasonably calculated, under all [of] the circumstances, to apprise interested parties of the pendency of the action”. (Mullane v Central Hanover Trust Co., 339 US 306, 314; cf. Velazquez v Thompson, 321 F Supp 34, 39, affd 451 F2d 202.) The method of service must not be “ ‘unlikely to succeed’ ” or “‘predestined to failure’” or the court may find it equivalent to “‘no attempt at all.’” (815 Park Owners v West LB Admin., 119 Misc 2d 671, 677; Palumbo v Estate of Clark, 94 Misc 2d 1.) As the Supreme Court has recently said in Greene v Lindsey (456 US 444, 452-453): “Short of providing personal service, then, posting notice on the door of a person’s home would, in many or perhaps most instances, constitute not only a constitutionally acceptable means of service, but indeed a singularly appropriate and effective way of ensuring that a person who cannot conveniently be served personally is actually apprised of proceedings against him.” General principles concerning service lead to the conclusion that in a “conspicuous place” service the place of posting must be on the premises in a *40 location, preferably the entrance door, which, in the reasonable opinion of the process server, is sufficiently obvious to the occupant so to be expected to be seen.
Application of that rule to the facts at bar is relatively simple. The posting on the stairway door is defective. The proof does not establish that the stairwell could reasonably be expected by a process server to be used as an entrance to the premises. A door that could not be expected to be used is inadequate as a site for posting. Thus service on the fifth and ninth floors is defective.* On the eighth floor, which has a vestibule, it is obvious from the discussion above, that only the loft door itself is the appropriate place for posting.
The service on the inside of the elevator shaftway door is sufficient under the unusual circumstances here. Since the pirocess server could not enter the floor, the elevator door marked “the location at which the process server’s progress is arrested.” (duPont, Glore Forgan & Co. v Chen, 41 NY2d 794, 797.) The locked shaft door made that doorway a place that might reasonably be expected to give notice to the tenant before the door was unlocked. It may well be that the posted notices were torn off before the respondents arrived home (Greene v Lindsey, 456 US, at p 453) but that is not the responsibility of the process server who has complied with the law. (Hospitality Enterprises v Fuego Rest. Corp., supra.) Of course here the respondents who claim lack of notice appeared by learned, experienced counsel promptly upon being served.
The second floor tenant claims that she always walks up •the stairs because the elevator does not work properly and, therefore, only posting on the stairway door is proper. The argument must fail. The process server is not required to investigate the habits of the person to be served. An objective standard must be applied otherwise those who use unexpected methods of entrance and egress could avoid service altogether.
All of the respondents claim that the mail service was defective because they do not receive mail delivery in the *41 building. The court heard testimony on that subject and concludes that the landlord has not acted in such a manner as to preclude mail delivery. The tenants could make arrangement with the post office but failed to do so; in fact they admit that they receive mail when one tenant picks it up from the mailman. Thus the court need not consider the legal effect of the landlord’s resort to alternative service techniques after it has precluded the possibility of mail receipt.
The motion to dismiss is granted as to all respondents except Wanda Coffee.

 The placing of one copy of the papers under the door of the ninth floor is also ineffective since there are two named respondents and the court could not ascertain which was served.