HEIMAN FALLEK AND SARAH FALLEK v. J. F. CRAMER AND WILLIAM J. EVANS, DOING BUSINESS AS CENTRAL DESK AND SAFE COMPANY. 191 S. W. (2d) 375.

Kansas City Court of Appeals. December 3, 1945.

*Marion D. Waltner* and *Clarence C. Chilcott* for appellant.

*Jacob Brown* for respondents.

CAVE, J.—This is a suit in unlawful detainer to recover possession of premises held by defendants under a written lease. The suit was filed in a justice of the peace court and removed on *certiorari* to the Circuit Court of Jackson County. A jury was waived and the cause was tried before the court, resulting in a judgment for the defendants. Plaintiffs perfected their appeal.

The essential facts are that, prior to July 7, 1942, the real estate in issue was owned by the New England Mutual Life Insurance Company, and on said date the defendants entered into a written lease whereby the said Insurance Company leased the premises to defendants for a period of five years, beginning October 1, 1942, and ending September 30, 1947. Defendants took possession, and continue to occupy the premises, under the lease. Only two sections of the lease are in issue: They are:

"7. The covenants herein contained shall run with the premises hereby let and bind the heirs, executors, administrators, assigns, and successors of the lessor and lessee respectively and consent of lessor to assignment and acceptance of rent from assignee of the lessee shall not release the lessee from his obligation to pay rent and comply with the other conditions of this lease.

9. After the first year of this lease has elapsed, then in the event of a *bona fide* sale of the premises described in this lease, the lessor reserves the right to cancel the same by first giving the lessee ninety days' notice in writing."

About July 26, 1943, the Insurance Company sold the premises to Robert J. Willis and executed its special warranty deed providing that the conveyance was made subject to the lease under consideration and assigning the lease to him. On July 30, 1943, Mr. Willis came to the store operated by defendants and exhibited to them his deed to the property and their lease with the Insurance Company and notified them that he was now the owner of the property. From July 30, 1943, to and including February 1, 1944, defendants paid the rent to Mr. Willis.

The record discloses that on July 30, 1943, Willis executed his warranty deed conveying the property involved to the plaintiffs; that this deed was not recorded and had not been recorded at the time of trial. Plaintiff, Heiman Fallek, testified that shortly after Willis executed said deed that he went to see defendant, Cramer, and told

him that he, Fallek, had bought the building and that the rent should be paid to Fallek, because Willis was simply an employee of his, and that he told Cramer he would "not bother you unless they make me move or they sell that property; . . . " (referring to property Fallek then occupied). At that time Fallek's place of business was located at 1430 Grand Avenue and the property involved in this suit was located at 1407 Grand Avenue. Cramer denied that Fallek ever told him that he had purchased the property. It is clear from the record that the rental checks were made to Willis and had been endorsed by him and Mr. Fallek.

Plaintiffs' evidence is to the effect, and they now contend, that Willis was merely acting as their agent in all of the various transactions concerning this property and the rent thereof. On February 15 and 29, 1944, Willis, by letters, notified defendants to vacate the property involved on or before June 1, 1944, or within the period of ninety days from March 1, 1944. Among other things, the letter stated: "This notice is in accordance with the lease dated July 7, 1942. The reason that the present owner is asking for possession of the above-described property is that he desires to occupy same." Defendants refused to surrender possession, and this suit followed.

Plaintiffs (appellants) make but one assignment of error: "The court erred in rendering judgment for the defendants because plaintiffs' evidence establishing their right to possession was documentary, undisputed and undisputable. The right to terminate the lease ran with the land, enured to the benefit of plaintiffs and they could exercise it at any time after the first year of the lease elapsed, which they did."

Defendants contend that the lease was not subject to cancellation at the time and in the manner attempted by plaintiffs on their agent, Willis; because if the right of cancellation was a covenant running with the land, plaintiffs cannot cancel except upon their making a bona fide sale of the premises as provided in Clause 9; that plaintiffs and their agent acquired the property subject to the lease; and that they acquired no greater rights as purchaser and lessor than were possessed by the original lessor, and can cancel the lease only in connection with a bona fide sale which they may make.

Plaintiffs assert, and defendants tacitly admit, that the stipulation in the lease, now under consideration, is a covenant running with the land and that the right to cancel and terminate the lease, under certain conditions, is not personal to the original lessor, the Insurance Company. Under the two sections of the lease, referred to above, we think there is no doubt that the stipulation in the lease, with reference to the right of cancellation, is a covenant running with the reversion, although the authorities are not in full harmony in construing similar provisions. This question is so ably and fully discussed by Judge GOODE of the St. Louis Court of Appeals in the case

of Hadley v. Bernero, 97 Mo. App. 314, we shall not again state the reasons therefor, but refer those interested to that opinion. The views therein expressed are supported by more recent authoritis, some of which are: [Childs Company v. Burker, 110 Misc. 103, 180 N. Y. Supp. 919; 507 Madison Avenue Realty Co. v. Martin et al., 200 App. Div. 146, 192 N. Y. Supp. 762; McAdam on Landlord and Tenant (5 Ed.), pp. 502-3; Jones on Landlord and Tenant, Sec. 300, p. 459; Cincinnati-Louisville Theater Co. v. Masonic Widows & Orphans, 272 Fed. 637; Stender v. Kerreos, 121 N. W. 258; Bibler v. Iuchs, 275 S. W. 779; Cooper v. Gambill, 146 Ala. 184; Pearson v. Howell (Ia.), 169 N. W. 368; McVitty v. Flentze (Calif.), 169 Pac. 666; Burg v. Harris (Calif.), 237 Pac. 399; Nance v. Mulligan (Kan.), 293 Pac. 490.]

But conceding that this covenant of the lease runs with the land, does that fact give to plaintiffs an unrestricted right to cancel the lease under the facts in this case? We think not, for the reasons now to be considered.

Under the terms of the lease the original lessor had the right to cancel it, by giving ninety days' notice, *after the first year of the lease had elapsed and in event of a bona fide sale of the premises.* The first year had not elapsed at the time the original lessor and owner conveyed the property to Willis and Willis to plaintiffs, and no notice of cancellation was served on defendants by anyone at or near that date. The original lessor never served any notice on defendants. The plaintiffs, either in person or by their agent, Willis, notified defendants that they had purchased the property subject to the lease, and that they should pay the monthly rental to them, which they did, for the next seven or eight months. Under such circumstances, the plaintiffs became the lessor and could cancel the lease only in accordance with its provisions. This proposition is definitely decided by the cases of Gates v. Norton, 228 Ill. App. 96; Krim Realty Corporation v. Varveri, 97 Misc. 407, 161 N. Y. Supp. 229; Butler & H. Co. v. Meth, 122 N. Y. Supp. 271; Cleveland Wrecking Co. v. Aetna Oil Co. (Ky. App.), 154 S. W. (2d) 31; Payne v. Brathwaite, 185 N. Y. Supp. 107. In the Krim Realty Corporation case, *supra,* the court, in construing a very similar lease provision and facts now before us, said: "But it is not necessary to determine whether the privilege is personal, for, if the right of cancellation were a covenant running with the land, it would not entitle the grantee to cancel the lease until it, in turn, made a sale. [Butler & Herman Co. v. Meth, 122 N. Y. Supp. 271.] When the respondent accepted an installment of rent from appellant, it became the landlord; and if it was at all entitled to the privilege of cancellation contained in paragraph 14, it could only exercise the privilege in the one case specified in that paragraph, which was: 'In case the said landlord sell the said premises, and the purchaser thereof demands possession.' "

In the Gates case, *supra*, the Illinois Court announced the principle in this language, (1. c. 99): "We do not consider the right to terminate this lease, as reserved by its terms, to be one which was personal to the original lessor, Racine. It was a covenant which ran with the land and passed to the successive grantees of the original lessor. But that does not mean that a grantee, by reason of that clause, had the right as such grantee and by reason of his purchase, to terminate the lease *because of such purchase*. The right which a grantee acquires, under the provision of the lease referred to, is only the right to terminate the lease as a *lessor 'in the event of the sale of the premises,' by him*. That is the right reserved in the lease to the lessor and that is the right passing on to the lessor's grantees or assigns. . . . Under this clause in the lease no successor in interest of the original lessor has the right to terminate the lease *by reason of the purchase of the property by him* but only 'in the event' of a sale of the property' by him. . . . " (Italics ours.)

In Butler & Herman Co., *supra*, the court was considering a lease with this provision, "Fourth: It is understood that in the event of a sale of the said premises this renewal term, or any other extension or renewal term, shall cease and be determined upon fifteen (15) days' notice to the tenant, . . . " In disposing of the question we are now considering, the court said (273): "The 'Fourth' paragraph of the extension agreement did not mean that the landlord could arbitrarily terminate the term demised simply upon giving 15 days' notice to the tenant. It meant, what it plainly said, that the tenancy could be terminated 'in the event of sale,' provided that 15 days' notice of sale was given the tenant in the manner prescribed. The demise was thus upon a limitation by which the term was to expire in the event of a sale and upon giving the required notice in the manner prescribed. In selling the premises without giving the required notice, the landlord waived the right to insist that this tenant should forfeit his lease. By the acceptance of rent the same relation existed between the new owner and the tenant that had previously existed between the original landlord and the tenant. Unless the event happened, viz., a sale and proper notice thereof, the estate of the tenant would not terminate until the expiration of the time stipulated in the extension agreement. The notice which the new landlord gave on August 12th was merely an arbitrary attempt to terminate the tenant's estate without regard to the provisions of the extension agreement. No sale of the premises took place after the tenant paid rent to the new landlord, and in the absence of such a sale the latter had no right to terminate the estate of the tenant simply by serving a notice that on and after a certain date this lease would 'become null and void.'" Other cases holding to the same effect are, Cleveland Wrecking Co. v. Aetna Oil Co., *supra*, and Payne v. Brathwaite, *supra*.

Plaintiffs ably argue that the opinion in the Hadley case, *supra,* disposes of the issues in this case. We do not so construe the opinion. In that case the lease did provide that if the sale of the property be made during the continuance of the lease, then the lessee would deliver possession upon thirty days' notice in writing. It was the contention of the defendant that this was a *personal* right reserved for the original lessor only and did not run with the land. The court held that it was a covenant which ran with the land and the purchaser from the original lessor was entitled to possession after giving proper notice; but it does not appear from the opinion that the puchaser ever accepted rent from the lessee and thereby became the *lessor* and bound by the same limitations and restrictions in the lease as was the original lessor, i. e., he was entitled to posession only *upon a sale of the property.* The sale was made and the notice given within a period of thirty days. The court did not discuss or decide the specific question which we are considering.

In the Childs case, *supra,* the lease entitled the lessor to the possession of the property by giving thirty days' notice without *any restrictions* whatever. The court merely held that the covenant ran with the land and the purchaser had the same rights that the original lessor had.

Without lengthening this opinion by discussing each case relied upon by plaintiffs, an examination of them will disclose that they have distinguishing features such as: the original lessor gave the notice or the purchaser gave the notice before accepting the rent and becoming the lessor, or the lease provided for the right of cancellation without any limitations or restrictions, such as only *in the case of the sale of the property.*

We hold that the stipulation now under consideration is a covenant which runs with the reversion, but that when plaintiffs purchased the property and continued to accept rent from the lessees, they thereby became *lessors* and bound by the limitations and restrictions in the covenant, and could dispossess the defendants only *in the event of a bona fide sale of the premises.*

It follows that the judgment of the trial court was correct and should be affirmed. It is so ordered. All concur.