330 So.2d 183 (1976)
Harold MATHEWS and Vera Mathews, His Wife, Jointly and Severally, Appellants,
v.
FLORIDA CROSSBREEDS, INC., a Florida Corporation, Appellee.
No. 75-1229.
District Court of Appeal of Florida, Second District.
April 9, 1976.
*184 Christopher C. Ford, Ford, Cauthen & Robuck, Tavares, for appellants.
Royce D. Pipkins, Rosenblum & Pipkins, Casselberry, for appellee.
GRIMES, Judge.
This is an appeal from a judgment of reformation and specific performance. Appellants (Mathews) and appellee (Crossbreeds) entered into a written lease agreement whereby Mathews leased to Crossbreeds certain farmland in Lake County for a period of five years. Thereafter, Crossbreeds entered into possession of the premises and paid rent to Mathews for more than three years.
Included in the lease was a provision giving Crossbreeds the option to purchase which read as follows:
"22. Lessor grants to Lessee the option to purchase the leased property for the total price of $330,000.00, payable $50,000.00 down and $28,000.00 payable annually, together with interest payable annually at the rate of 6% per annum. Lessee may exercise this option at any time during the term of this lease. Upon exercise of the option, Lessor will furnish Lessee with an abstract of title showing marketable title in Lessor, and Lessor will convey title to Lessee by general warranty deed free of all encumbrances."
On July 6, 1973, Crossbreeds' attorney wrote Mathews advising that Crossbreeds had exercised its option to purchase the property. The letter advised that upon a showing of marketable title, Crossbreeds would tender the monies due pursuant to the lease and option and would proceed to closing. When Mathews declined to go forward with the sale, Crossbreeds filed this suit for reformation and specific performance.
Crossbreeds' claim for reformation was necessitated by a problem in the legal description of the property set forth in the lease. The lease was prepared by an attorney for Crossbreeds using tax receipt descriptions supplied by Mathews to officers of Crossbreeds. The lease described four contiguous parcels of land in Township 18 South, Range 25 East, two of which were in Section 34 and two of which were in Section 27. One of the parcels in Section 34, which was referred to at the trial as Parcel 3, was described as follows:
"... beginning at the Northwest corner of the Northeast 1/4 of said Section, run South to the center line of canal, Northeasterly along canal to East line of West 1/2 of Northeast 1/4 of Northeast 1/4, South to Southwest corner of Northeast 1/4 of Northeast 1/4 of Northeast 1/4; ..."
When charted on a map, the legal description for Parcel 3 fails to close. Referring to this discrepancy in the final judgment, the court made the following finding:
"2. The boundary description of the lands covered by the lease, although not closing in a surveying sense in the Southeast corner thereof, is capable of being reformed to meet the intentions of the parties. The intent of the parties is *185 evidenced by the exercise or lack of exercise of dominion and control over the lands by the Plaintiff or Defendants subsequent to the promulgation of the lease, the location of recognized monuments on the land, such as fence lines, gates, canals, ditches and roads within the area where the boundary description fails to close and the language of the lease instrument itself."
On appeal, Mathews first contends that there was no meeting of the minds in that the intent of the parties was conflicting and ambiguous. Our study of the record indicates to the contrary. There is competent substantial evidence to support the court's finding with respect to the property the parties intended to include in the lease and option.
A more serious point is whether the court could properly go outside the contract to supply a description in order to reform the contract. In Carson v. Palmer, 1931, 139 Fla. 570, 190 So. 720, the Supreme Court said:
"There are cases holding that where the description of land in a deed or mortgage is in some respect vague, uncertain or indefinite, parol evidence is admissible, to explain and remove, by proof of pertinent facts existing at the time, the uncertainty, and to identify the property intended to be conveyed, thus giving effect to the intention of the parties to the instrument... .
"There are, however, exceptions to this rule. One of the recognized exceptions is that of a patent ambiguity. A patent ambiguity in the description of land is such an uncertainty appearing on the face of the instrument that the Court, reading the language of the instrument in the light of all facts and circumstances referred to therein, is unable to derive therefrom the intention of the parties as to what land was to be conveyed... .
"This type of ambiguity may not be removed by parol evidence, since that would necessitate the insertion of new language into the instrument, which under the parol evidence rule is not permissible... ."
The distinction between latent and patent ambiguity has been severely criticized. 30 Am.Jur.2d, Evidence § 1073; 102 A.L.R. 287. Some jurisdictions have chosen to reject the distinction and to treat patent ambiguities in the same manner as latent ambiguities. E.g., Stoffel v. Stoffel, 1950, 241 Iowa 427, 41 N.W.2d 16. Nevertheless, the Florida courts have continued to recognize the proposition that parol evidence cannot be introduced to explain a patent ambiguity. Landis v. Mears, Fla. App.2d, 1976, 329 So.2d 323, (Opinion filed March 19, 1976); Ace Electric Supply Co. v. Terra Nova Electric, Inc., Fla.App.1st, 1973, 288 So.2d 544.
The description of Parcel 3, being ambiguous on its face, appears to fall within the definition of a patent ambiguity. The question then posed is whether the parol evidence restriction with respect to patent ambiguities is applicable in a suit for reformation. The effect of reformation on the parol evidence rule is explained by Williston as follows:
"The right of reformation, wherever allowed, is necessarily an invasion or limitation of the parol evidence rule, since when equity reforms a writing, it enforces an oral agreement at variance with the writing which the parties had agreed upon as a memorial of their bargain.
"This limitation is necessary to work justice, and there seems no more reason to object to it in case of reformation than in case of rescission for fraud or for mistake. It is understood that to warrant reformation or rescission, the court must be persuaded by the clearest kind of evidence that a mistake has been made by both parties, or in some cases *186 by one, or that some other basis exists upon which relief should be granted.
"In either case, unless the mistake precludes the existence of a contract at law, it should not be denied that the writing correctly states the actual contract or conveyance which has been made, but since it is inequitable to allow the enforcement of it, and, since justice requires the substitution of another in its place, equity gives relief, where reformation is appropriate, and to that end, generally and necessarily admits any relevant parol or other extrinsic evidence." 13 Williston on Contracts, Third Edition, § 1552.
See also, Sine v. Harper, 1950, 118 Utah 415, 222 P.2d 571; 3 Corbin on Contracts, § 540; 66 Am.Jur.2d, Reformation of Instruments, § 118.
The predicate for reformation in the instant case was mutual mistake. Obviously, neither party intended Parcel 3 to be described in the manner set forth in the lease. The court was entitled to consider extrinsic evidence in seeking to determine the understanding of the parties. Aided by the fact that Florida Crossbreeds had been in possession under the lease for more than three years, the court was able to specify the actual description of Parcel 3 as contemplated by both parties.
At first blush, our holding appears contrary to the case of Connelly v. Smith, Fla. App.3d, 1957, 97 So.2d 865, in which our sister court refused to reform a patently ambiguous deed description and denied the introduction of extrinsic evidence to clarify the description. However, that case was essentially a suit to quiet title. On the subject of reformation, the court only said:
"The plaintiff prayed in the alternative for reformation of the deed. The reformation needed was to supplement the description by adding the section, township and range, all of which were omitted. The complaint failed to meet the established requirements to make out a case for reformation. See Horne v. J.C. Turner Cypress Lumber Co., 55 Fla. 690, 45 So. 1016, 1018-1019; Interstate Lumber Co. v. Fife, 70 Fla. 178, 69 So. 715, 717; Bexley v. High Springs Bank, 73 Fla. 422, 74 So. 494."
An analysis of the cases cited for the foregoing statement clearly demonstrates that the court had not rejected the theory of reformation as a possible remedy for a patently ambiguous description, but was simply saying that the complaint in that case (apparently involving a gratuitous conveyance) failed to include the elements necessary to state a claim for reformation. Cf. Patterson v. Taylor, Fla.App.3d, 1960, 123 So.2d 389. Here, Florida Crossbreeds pled and proved mutual mistake, one of the classic grounds for reformation. Shell Creek Land Co. v. Watson, 1931, 101 Fla. 172, 133 So. 621; Rucks v. Ansin, Fla.App. 4th, 1967, 198 So.2d 662. The court properly considered extrinsic evidence in determining the correct description for Parcel 3.
Finally, Mathews contends that Crossbreeds failed to properly exercise the option because there was no tender of $50,000 at the time its attorney advised Mathews of the exercise of the option. However, the record supports the conclusion that Crossbreeds was ready, willing and able to make the payment, and we believe that the court correctly held that the down payment did not have to be made when the option was exercised. The court required Crossbreeds to place the $50,000 in escrow pending the determination of marketable title and the execution and delivery of the appropriate closing documents. If anything, the detailed requirements of the judgment pertaining to the closing of the sale favored the Mathews', so they are in no position to complain.
AFFIRMED.
BOARDMAN, Acting C.J., and SCHEB, J., concur.