403 So.2d 469 (1981)
Rose A. MANZO and Betty A. Cox, d/b/a Titusville Beauty School, Appellant,
v.
PATCH PUBLISHING CO., INC., Appellee.
No. 79-504.
District Court of Appeal of Florida, Fifth District.
August 12, 1981.
Rehearing Denied September 15, 1981.
*470 Richard A. Manzo and Ernest C. Wright, Titusville, for appellants.
Richard H. Miller, Titusville, for appellee.
SHARP, Judge.
Rose A. Manzo (d/b/a the Titusville Beauty School) appeals from a judgment entered after a jury trial based on a directed verdict made at the close of her case. The trial court granted Patch Publishing Co., Inc. the right to evict the Beauty School from a portion of a building then owned by Patch, and denied Manzo any relief on her counterclaim for damages. Manzo argues the lower court erred in construing "Clause Tenth" of the lease[1] as giving Patch (a vendee of the original landlord) the right to cancel the lease, and in directing a verdict for Patch because the evidence showed Patch waived its right under the cancellation clause. We disagree and affirm the judgment.
A directed verdict in this case was appropriate on the construction of the lease issue because the construction of a written document is primarily a question of law for the court[2] particularly where there is no conflicting evidence presented for resolution regarding an ambiguity and differing intents of the original parties.[3] Although *471 the issue of "waiver" is usually considered one of fact appropriate for resolution by a jury, in this case all the facts bearing on this issue were undisputed, and there were no facts or inferences to support a finding that Patch waived its right to cancel the lease.[4]
The evidence established that Manzo was leasing part of a building located in Brevard County for her Beauty School. The lease was a form business lease with an inartfully drafted cancellation clause: "[I]n the event of the sale ... of all or any part of the building; requiring this space, ... the lessee hereby agrees to vacate some... ." While her lease was still in effect, the agents for the Bryan estate (the original lessor) sold the building to Patch Publishing Co., Inc.
Glenn Patch, the president of Patch Publishing, testified that he, together with two friends, originally contracted to buy the property in February of 1979. Before the closing in April of 1979, the friends assigned their interests to Patch, and Patch Publishing alone bought the building. At that time Glenn Patch intended to move his publishing business into the space occupied by the Beauty School. He was unaware that Manzo had renewed the Beauty School lease, and he assumed she only had a month-to-month periodic tenancy.
Shortly after the closing, at Patch's direction, an attorney for Patch wrote a letter to the Beauty School purporting to terminate the month-to-month tenancy. The letter was dated April 25, 1979, and it asked the tenant to vacate by May 31, 1979. Patch accepted a monthly rental payment from the Beauty School in early May, but Glenn Patch testified without contradiction it was accepted before he or his attorney knew the Beauty School lease had been renewed. When the attorney for the Beauty School told Patch and its attorney about the renewal, Patch's attorney sent the Beauty School a letter dated May 25, 1979 specifically exercising the option to cancel contained in "Clause Tenth", and requesting possession of the premises no later than sixty (60) days after the date of the letter. At no time did Patch ever agree with the Beauty School that it could continue the lease, nor did it offer to negotiate a new lease.
Although there is some authority to the contrary,[5] the better view is that an option to cancel a lease upon the occurrence of a sale may be exercised by the purchaser as well as the original lessor[6] where the lease does not expressly require that it be exercised by one or the other. In this case, the lease does not specify which party must exercise the option to cancel. This conclusion is strengthened when the lease (as in this case) contains the provision that the lease is binding on the lessor "and its assigns."[7]
To hold that only the lessor (as Manzo argues) can exercise the option to cancel, would greatly diminish the practical use or value of this provision. The lessor would have to cancel before the sale occurs, and run the risk of losing a possibly valuable lease if the sale is not consummated. Further, some authorities question whether a mere contract to sell, as opposed to a sale, gives the lessor the right to cancel under such a lease provision. Thus, if the sale does not close the lessor may lose his tenant, or face a damage suit for wrongful eviction. See 49 Am.Jur.2d Landlord and *472 Tenant § 1004 (1970). After the sale, the lessor conceivably has no right to cancel because he no longer owns the reversion.[8] Therefore, the lessor could safely exercise his option to cancel only in the flash of the second when "seisin" is transferred to the purchaser. Surely this is too restrictive a view of "Clause Tenth." This kind of clause was intended to benefit the lessor and his vendee, and it should not be strictly construed against them.[9]
The grantee's or vendee's right to cancel the lease after a sale may be waived if it accepts rent payments from the lessee or takes other action under circumstances indicating it did not intend to cancel the lease: in sum, if it "attorned" to the lessee as the new lessor.[10] In this case, there was no conflicting evidence on this point. The vendee, Patch Publishing, consistently sought to terminate the lease, and it accepted one month's rent payment from the lessee under the belief there was only a periodic tenancy, which was consistent with its termination notice.[11] Its failure to send the proper termination notice in the first instance was only a technical defect.[12] Our conclusion on the waiver issue is further buttressed by "Clause Nineteenth" of the lease which provides: "The rights of the lessor under the foregoing shall be cumulative, and failure on the part of the lessor to exercise promptly any rights given hereunder shall not operate to forfeit any of the said rights."
Accordingly, the judgment appealed is
AFFIRMED.
FRANK D. UPCHURCH, Jr., J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting:
I think the majority and better view is that expressed in the cases collected in note 5 of the majority opinion. The only authority to the contrary is the one New York lower appellate court case cited in notes 6 and 11. Even the cases that hold that a purchaser from the lessor is permitted to exercise a "right to terminate upon sale" provision of a lease generally only hold that the purchaser may exercise the provision only upon a subsequent good faith sale by that purchaser. I would reverse.
NOTES
[1] "Clause Tenth" of the lease provides:

It is hereby agreed and understood between lessor and lessee that in the event the lessor decides to remodel, alter, or demolish all or any part of the premises leased hereunder, or in the event of sale or long term lease of all or any part of the building; requiring this space, the lessee hereby agrees to vacate same upon receipt of sixty (60) days written notice and the return of any advance rental paid on account of this lease.
Most authorities say this clause creates a lease estate "upon a condition subsequent." 49 Am.Jur.2d Landlord and Tenant § 999 (1970).
[2] Peacock Construction Co. v. Modern Air Conditioning, Inc., 353 So.2d 840 (Fla. 1977); Buckner v. Physicians Protective Trust Fund, 376 So.2d 461 (Fla. 3d DCA 1979); Innkeepers International, Inc. v. McCoy Motels, Ltd., 324 So.2d 676 (Fla. 4th DCA 1975); 51C C.J.S. Landlord & Tenant § 245 (1968).
[3] J & S Coin Operated Machines, Inc. v. Gottlieb, 362 So.2d 38 (Fla. 3d DCA 1978); see Mathews v. Florida Crossbreeds, Inc., 330 So.2d 183 (Fla. 2d DCA 1976); Royal American Realty, Inc. v. Bank of Palm Beach and Trust Co., 215 So.2d 336 (Fla. 4th DCA 1968).
[4] Zilber Cab Co. v. Capeletti Bros., Inc., 303 So.2d 360 (Fla. 3d DCA 1974); Mathis v. Lambert, 274 So.2d 601 (Fla. 3d DCA 1973).
[5] Gorman v. General Outdoor Advertising Co., 320 Ill. App. 339, 50 N.E.2d 854 (1943); Gostin v. Needle, 185 Md. 634, 45 A.2d 772 (1946); Scheman v. Adore Realty Corp., 117 N.Y.S.2d 884 (1952); Petition of Furio, 272 App.Div. 941, 72 N.Y.S.2d 425 (1947); Sitt v. Fifth Ave. Realty Co., 31 Misc.2d 803, 220 N.Y.S.2d 526 (1961); Payne v. Brathwaite, 113 Misc. 517, 185 N.Y.S. 107 (1920); Krim Realty Corp. v. Varvori, 97 Misc. 407, 161 N.Y.S. 229 (1916).
[6] Morlee Sales Corp. v. Manufacturers Trust Co., 9 N.Y.2d 16, 210 N.Y.S.2d 516, 172 N.E.2d 280 (1961); 49 Am.Jur.2d Landlord and Tenant §§ 1006, 1009 (1970); 51C C.J.S. Landlord & Tenant § 93(3) (1968).
[7] Parkway Baking Co. v. Fruehauf Trailer Co., 351 Pa. 82, 40 A.2d 268 (1944).
[8] 49 Am.Jur.2d Landlord and Tenant § 1006 (1970).
[9] Upton v. Toth, 36 Cal. App.2d 679, 98 P.2d 515 (1940); 49 Am.Jur.2d Landlord and Tenant § 1000 (1970); 51C C.J.S. Landlord & Tenant § 93(3) (1968).
[10] Fallek v. Cramer, 239 Mo. App. 494, 191 S.W.2d 375 (1945); Sitt v. Fifth Ave. Realty Co., 31 Misc.2d 803, 220 N.Y.S.2d 526 (1961); Krim Realty Corp. v. Varvori, 97 Misc. 407, 161 N.Y.S. 229 (1916); Butler & Herman Co. v. Meth, 122 N.Y.S. 271 (1910); 49 Am.Jur.2d Landlord and Tenant § 1006 (1970).
[11] Morlee Sales Corp. v. Manufacturers Trust Co., 9 N.Y.2d 16, 210 N.Y.S.2d 516, 172 N.E.2d 280 (1961).
[12] 49 Am.Jur.2d Landlord and Tenant §§ 1002, 1007 (1970).