467 So.2d 326 (1985)
Rose S. Braxton MITCHELL, Appellant,
v.
Wayne THOMAS, Appellee.
No. 84-1472.
District Court of Appeal of Florida, Second District.
February 15, 1985.
Rehearing Denied April 17, 1985.
*327 Marcus J. Ezelle of Marcus J. Ezelle, P.A., Wauchula, for appellant.
Val R. Patarini, Wauchula, for appellee.
BOARDMAN, EDWARD F., (Ret.), Judge.
Appellant Rose S. Braxton Mitchell challenges the trial court's final judgment quieting title to a three-acre parcel of real property in favor of appellee Wayne Thomas. The property in question was subject to the intra-family conveyances described below.
Wayne Thomas purportedly purchased the three-acre parcel from his mother, Ethel V. Thomas, in an informal transaction which was not documented by any written instrument of conveyance. Approximately nine months later, Thomas contracted to sell the property to his nephew, Fred Michael Braxton. To effect this transaction, Ethel V. Thomas, who was still the record titleholder of the property, executed a warranty deed to Braxton on September 14, 1978; Braxton, in return, executed a note and mortgage payable to his uncle, Wayne Thomas, and then promptly recorded the deed. The note and mortgage to Thomas, however, were never recorded nor were they introduced into evidence during the final hearing which subsequently ensued on this matter. Although Braxton was married to appellant Mitchell at the time of this conveyance, Mitchell did not participate in negotiating the purchase nor was she included as a grantee on the deed or obligor on the note.
In June or July of 1981, Braxton fell into default under the note and mortgage. Consequently, on December 4, 1981, he attempted to convey the subject property to Wayne Thomas in lieu of foreclosure. Although the quitclaim deed which evidenced this transaction was recorded on December 7, 1981, it contained a legal description *328 which failed to close by virtue of the omission of east and south boundary calls from the property's correct legal description.[1]
On March 17, 1982, the Braxtons' marriage was dissolved through a final judgment which ordered Fred Michael Braxton to convey to Rose Braxton Mitchell, by quitclaim deed, any interest which he might have had in the subject three acres. The final judgment acknowledged that the property had been returned to Braxton's uncle and provided that "the wife is [sic] she so desires may bring appropriate legal action if any action is available." Braxton complied through a quitclaim deed which was executed and recorded on June 3, 1982. At the time of the conveyance, however, he believed that he had no remaining interest in the subject property.
After Mitchell recorded her quitclaim deed from Braxton, Thomas discovered the defect in the legal description in Braxton's deed to him. He then procured a corrective quitclaim deed from Braxton, correctly describing the real property in question, which was executed on June 10, 1983, and recorded on June 27, 1983.
Thomas subsequently instituted the instant action against Mitchell to quiet title to the subject property, deraigning his title to the property from Braxton's December 4, 1981, conveyance to him. When Mitchell moved to dismiss the complaint on the basis of the insufficient legal description contained in the December 4 deed, Thomas amended his complaint to deraign title from his mother. He at no time sought reformation of the December 4 deed. Mitchell answered, raised affirmative defenses, and filed a counterclaim for quiet title. Following a hearing on this matter, the trial court rendered its final judgment quieting title in favor of Thomas. For the reasons discussed below, we reverse.
To effect a valid conveyance of land, a deed must contain a legal description which is sufficiently definite and certain to permit the land to be identified. Hoodless v. Jernigan, 46 Fla. 213, 223, 35 So. 656, 660 (1903). As the Florida supreme court held in Campbell v. Carruth, 32 Fla. 264, 268, 13 So. 432, 433 (1893), a legal description satisfies this requirement if the description of the land conveyed in a deed is such that "a surveyor, by applying the rules of surveying, can locate the land, ... and the deed will be sustained if it is possible from the whole description to ascertain and identify the land intended to be conveyed." A deed containing a legal description which is so vague and indefinite that a surveyor would not be able to locate the described land is a nullity. Hoodless v. Jernigan, 46 Fla. at 223, 35 So. at 660.
We agree with Mitchell's assertion that the omission of the east and south boundary calls from the legal description in Braxton's December 4 deed to Thomas left the description "patently ambiguous," or subject to such uncertainty appearing on the face of the instrument that the court could not discern from the language of the instrument  read in light of all facts and circumstances referred to therein  the parties' intention as to what land was to be conveyed. See Carson v. Palmer, 139 Fla. 570, 190 So. 720 (1939). Indeed, neither the quantity of the conveyance nor its exact *329 location and boundaries could be ascertained from the face of the December 4 deed. Although Florida law permits the introduction of extrinsic evidence to resolve latent ambiguities, courts of this state adhere to the proposition that parol evidence may not be introduced to explain a patent ambiguity. Mathews v. Florida Crossbreeds, Inc., 330 So.2d 183 (Fla. 2d DCA 1976). As the supreme court explained in Carson v. Palmer, the resolution of a patently ambiguous deed through the introduction of extrinsic evidence "would necessitate the insertion of new language into the instrument, which under the parol evidence rule is not permissible." 139 Fla. at 575, 190 So. at 722. The Third District aptly summarized the law on this point when it stated, "[C]ourts will not permit parol evidence to be given, first to show what land was meant to be conveyed, and then to create and supply its description." Connelly v. Smith, 97 So.2d 865, 869 (Fla. 3d DCA 1957). Consequently, we believe that the trial court erred in considering the extrinsic circumstances surrounding Braxton's patently ambiguous deed to Thomas in an attempt to identify the land intended to be conveyed.
Finally, we address Thomas' assertion that the omission in the legal description in the December 4 deed constituted a scriverner's error which a court of equity could correct through reformation. While extrinsic evidence is admissible to prove the parties' intention in a suit seeking reformation, even when the ambiguity is patent, Mathews, 330 So.2d at 185-86, this rule applies only when a party has properly sought and established his entitlement to reformation. See Sabel V. Mutual Development, Inc., 313 So.2d 77, 79 (Fla. 1st DCA 1975); Connelly v. Smith at 869. In the instant case, Thomas did neither.
Having concluded that Braxton's December 4 deed to Thomas contained an insufficient legal description which rendered the conveyance a nullity, we reverse the trial court's final judgment quieting title in favor of Wayne Thomas and remand with directions to render judgment in favor of Rose S. Braxton Mitchell, the holder of the first duly recorded deed describing the real property in question.
OTT, A.C.J., and FRANK, J., concur.
NOTES
[1] The parties agree that the following legal description correctly identifies the property in question.

Commence at SW corner of SW 1/4 of SE 1/4 of SE 1/4, thence East along South line of SW 1/4 of SE 1/4 of SE 1/4 208.71 feet, North 387.29 feet for a point of beginning, continue North 30.13 feet, West 31.37 feet, North 242.58 feet more or less to a point on North line, East 482.66 feet, South 272.71 feet to a Point being 387.29 feet North of Southeast corner, West 451.29 feet to point of beginning in Section 15, Township 33 South, Range 24 East, Hardee County, Florida.
Braxton's December 4 deed to Thomas, however, contained the following legal description:
Commence at SW corner of SW 1/4 of SE 1/4 of SE 1/4, thence East along South line of SW 1/4 of SE 1/4 of SE 1/4 208.71 feet, North 387.29 feet for a point of beginning, continue North 30.13 feet, West 31.37 feet, North 242.58 feet more or less to a point on North line, a Point being 387.29 feet North of Southeast corner, West 451.29 feet to point of beginning in Section 15, Township 33 South, Range 24 East, Hardee County, Florida.