*States,* 148 U.S. 573, 580–81, 28 Ct.Cl. 558, 13 S.Ct. 702, 37 L.Ed. 564 (1893).

In re CLARK, Noel Dean, Jr., Debtor.

Stephany Carr, Trustee, Plaintiff,

v.

Jeffery Todd Clark, Defendant.

Bankruptcy No. 97–07770–9P7.
Adversary No. 99–576.

United States Bankruptcy Court,
M.D. Florida,
Fort Myers Division.

Feb. 11, 2003.

Stephany S. Carr, Naples, FL, trustee.

Stephen G. Wilcox, Fort Worth, TX, for Plaintiff.

John Kyle Shoemaker, Fort Myers, FL, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THE MATTER before this Court in this Chapter 7 case of Noel Dean Clark, Jr. (Debtor), is an adversary proceeding commenced by Stephany Carr (Trustee) against Jeffery Todd Clark (Defendant). The Trustee's Complaint was filed on October 4, 1999, and sets forth seven separate claims in seven separate counts. The Counts are summarized as follows.

In Count I, the Trustee seeks declaratory relief to the effect that the recordation of "Court Ordered Mineral Right and Royality [sic] Transfer," recorded in Official Public Records of Collier County on December 17, 1996 by the Debtor, is legally ineffective to effectuate a transfer of any mineral interests that the Debtor had in Collier County, Florida. (Ex. A to Compl. /Ex. 1 of Pl.). In said Order, the Debtor purports to transfer to Patricia Ann Clark, his former spouse (Ms. Clark), 50% interest in those mineral rights.

In the same Count, the Trustee alleges that the quit-claim deed executed by Ms. Clark to the Defendant on October 9, 1996 and recorded on January 24, 1997, is void. (Ex. B to Compl./Ex. 2 of Pl.). In addition, she alleges that the quit-claim deed executed on October 21, 1996 and recorded on January 27, 1997, (Ex. C to Compl./Ex. 3 of Pl.) from Ms. Clark to the Driftwood Family Trust (Family Trust), which also purports to transfer a portion of the Debtor's mineral interest, is void. Finally, the Trustee alleges that the quit-claim deed executed on July 2, 1997 from Besty Brennan, individually and Betsy Brennan as Trustee of the Family Trust (Ms. Brennan) to the Defendant and recorded on June 17, 1999, is void. (Ex. D to Compl. /Ex. 4 of Pl.).

In essence, the Trustee seeks a declaration that the first alleged transfer from the Debtor to Ms. Clark, in the form of the recordation of the Order, was not valid, thus any additional transfers of the same subject by Ms. Clark to the Defendant and to the Family Trust, and from the Family

Trust to the Defendant are also invalid and unenforceable.

Her claim in Count II is based on Section 547 of the Bankruptcy Code. In this Count she alleges that if the attempted transfer of December 1996 is valid, that is, the transfer by the Debtor to Ms. Clark, it is a preference and was to an insider, therefore it is voidable since it occurred within one year of the filing of the Debtor's Bankruptcy Petition. In this Count, the Trustee seeks a judgment avoiding the transfer from the Debtor to Ms. Clark and also all subsequent transfers by Ms. Clark to the Defendant and to the Family Trust, and from the Family Trust to the Defendant.

The claim in Count III is based on Section 548 of the Code. In this Count, the Trustee alleges that the following transfers made by the Debtor were made with the actual intent to hinder, delay and defraud creditors: (1) quit-claim deed executed on December 24, 1994 and recorded on May 12, 1997 (Ex. E to Compl./Ex. 8 of Pl.); (2) quit-claim deed executed on December 24, 1994 and recorded on May 12, 1997 (Ex. F to Compl./Ex. 9 of Pl.); and (3) quit-claim deed executed on December 24, 1994 and recorded on May 17, 1997 (Ex. G to Compl./Ex. 10 of Pl.).

In addition, the Trustee alleges in Count III that the quit-claim deed from the Family Trust to the Defendant, which transferred certain mineral rights that were originally transferred by the Debtor to the Family Trust (Ex. H to Compl./Ex. 7 of Pl.), was also transferred with intent to hinder, delay or defraud creditors. In the alternative, she alleges that the transfers were made without a reasonable equivalent value for the property interests transferred by the Debtor who was insolvent at the time.

In Count III, she also seeks a judgment avoiding the transfer by the Family Trust to the Defendant within one year of the filing of the Petition and seeks an attachment against the assets transferred and any proceeds from the interest transferred or, in the alternative, a money judgment for the value of the transferred properties.

The claim in Count IV is based on Section 548 of the Code and is based on the allegation that the following transfers by the Debtor to the Family Trust were made by the Debtor when he was insolvent and for which the Debtor did not receive a reasonable equivalent value. The three transfers involved are the same transfers as described in Count III (Exs. E, F, and G to Compl./Exs. 8, 9, and 10 of Pl.). Following those transfers, the Trustee alleges that on July 2, 1997, the Family Trust executed a quit-claim deed to the Defendant for the mineral rights which the Family Trust obtained from the Debtor and that the Defendant filed the same in the public records on June 17. 1999 (Ex. H to Compl./Ex. 7 of Pl.). It is contended by the Trustee that this transfer was also made with actual intent to hinder, delay or defraud creditors or, in the alternative, was made without receiving a reasonable equivalent value in exchange for the transfer while the Debtor was insolvent and that the Defendant accepted this transfer with the full knowledge that the property so transferred had been fraudulently transferred to the Family Trust by the Debtor. The Trustee seeks a judgment in this Count to avoid the transfer from the Family Trust to the Defendant or for attachment against any assets transferred and proceeds from the interest or, in the alternative, for the value of the transferred properties.

In Count V, the Trustee seeks to avoid as fraudulent transfers, under the Uniform Transfer Act, *Fla. Stat.* § 726.101 et seq., as made applicable by Section 544(b) of the Code, the transfers from the Family Trust

to the Defendant. The allegations in this Count are identical as recited earlier and involve the following transfers: (a) quit-claim deed executed on December 23, 1994 and recorded on February 7, 1995 (Ex. I to Compl./Ex. 11 of Pl.); (b) quit-claim deed executed on December 24, 1994 and recorded on February 7, 1995 (Ex. J to Compl./Ex. 12 of Pl.); (c) the three quit-claim deeds previously identified (Exs. E, F, and G to Compl./Exs. 8, 9, and 10 of Pl.); and (d) Assignment dated July 1, 1994 and recorded on February 7, 1995 (Ex. K to Compl./Ex. 13 of Pl.).

Following these transfers from the Debtor to the Family Trust, the Family Trust quit-claim deeded its interest to the Defendant and also assigned the transferred assignment to the Defendant (Ex. H and L to Compl./Ex. 7 and 14 of Pl.). In this Count, the Trustee seeks a judgment avoiding these transfers from the Family Trust to the Defendant and, again, seeks an attachment against the assets transferred and any proceeds or, in the alternative, the value of the transferred properties.

In Count VI, the Trustee seeks to avoid as fraudulent transfers, under the Uniform Transfer Act, *Fla. Stat.* § 726.101 et seq., as made applicable by Section 544(b) of the Code, transfers from the Family Trust to the Defendant. The allegations and relief are identical as set forth in Count V.

The last count in the Complaint, Count VII is based on the theory of constructive trust. In this Count, the Trustee alleges that she is entitled to a decree for the imposition of a constructive trust on all the properties which were transferred and recited above based on the allegation that the Defendant and the Family Trust were part of a scheme and conspiracy, in combination with the Debtor to defraud the creditors of the Debtor. She also alleges in support of the claim asserted in this Count that these transfers were made for the express purpose of hiding the assets of the Debtor and removing them from the reach of the then existing creditors of the Debtor and the future creditors of the Debtor. She alleges that the Defendant and the Family Trust actively participated in the scheme designed for the sole purpose to benefit the Defendant at the expense of the creditors of the Debtor.

The Defendant initially filed a Motion to Dismiss and subsequently an Amended Motion to Dismiss. On October 9, 2001, this Court entered an Order and granted the Defendant's Amended Motion to Dismiss in which the claims in Counts III and VII were dismissed but it was denied as to Counts I, II, IV, V and VI.

On October 29, 2001, the Defendant filed his Answer, Affirmative Defenses and Counterclaim. In his Answer, he set forth certain admissions and denials, including a denial that the Bankruptcy Court had jurisdiction to entertain the claims asserted by the Trustee at this late date (years after the discharge of the Debtor). In addition, the Defendant contends that the Trustee is barred to assert any claims based on the doctrine of res judicata and statute of limitations.

The Defendant's Answer is coupled with several affirmative defenses. The first affirmative defense of the Defendant is that he was an innocent purchaser for value. The second affirmative defense is based on the contention that the claims asserted by the Trustee are barred as a matter of law since the Defendant owned the property which is now subject to the Trustee's claim in a prior adversary proceeding, bearing Adv. Proc. No. 99–152, where the Trustee also sued Ms. Brennan, individually and as Trustee of the Family Trust.

The Defendant contends that the Trustee and her attorneys were fully aware of

the Defendant's ownership and failed to join the Defendant in that particular lawsuit, which involved the identical transfers which are now sought to be set aside by the Trustee.

The Defendant also challenges the Trustee's lack of standing to maintain an action; that the Debtor is entitled to a setoff from the Trustee for the alleged conspiracy and fraud asserted by the Trustee against the Defendant [sic].

Again, as an Affirmative Defense, the Defendant asserts the doctrine of res judicata, statute of limitations, and lastly that he no longer owns any of the mineral interest which have been assigned, reassigned and then reassigned again and any judgment adjudicated against the Defendant and all of the necessary parties, including him, would be a worthless judgment, just the same as the Trustee's judgment against Ms. Brennan. The Defendant also alleges that the Trustee came before this Court with unclean hands and, therefore, the claims are barred.

Finally, the Defendant filed a Counterclaim against the Trustee, Ms. Carr, individually, as well as against Stephen G. Wilcox, individually and the law firm of Snakard and Gambill, P.C. Two days later, on October 31, 2001, the Defendant filed an Amended Answer and Counterclaim. It appears that the only difference is that in the Amended Counterclaim, the Defendant properly added Ms. Carr, Mr. Wilcox and the law firm as third-party defendants. The Counterclaim was subsequently voluntarily dismissed by the Defendant.

The Defendant, pro se, filed his first Answer, Affirmative Defenses and Counterclaim as well as his Amended Answer and Counterclaim. Thereafter, he retained counsel and on January 31, 2002, the Defendant filed a pleading entitled "Amended Affirmative Defenses."

After the parties completed their discovery, this Court scheduled a final evidentiary hearing on the remaining counts, at which time this Court heard testimony of witnesses and considered the documents offered and introduced into evidence, and now makes the following findings and conclusions of law. As a threshold matter, this Court has determined that there are, in essence, four distinct sets of transfers that the Trustee seeks to void. The four distinct transfers and the accompanying Counts to her Compliant are summarized as follows:

### The First Set of Transfers: The Subjects of Counts I and II

On June 19, 1987, the Circuit Court of the Twentieth Judicial Circuit in and for Glades County, Florida, entered a Final Judgment of Dissolution of Marriage (Final Judgment) (Ex. 1 of Def.), in the dissolution proceeding commenced by Ms. Clark against the Debtor. The Final Judgment provided, *inter alia*, at paragraph 7 that the agreement (Agreement) of the parties, attached to the Final Judgment, was "made a part hereof is adopted and approved and the parties are *ordered* to comply with its terms." (Emphasis supplied). The Final Judgment and Agreement were recorded together in Glades County on July 1, 1987, at Official Records book 0110, beginning at page 0522. The Debtor also caused the Final Judgment and Agreement to be recorded in Collier County, Florida on December 17, 1996, at Official Records book 2261, beginning at page 2295.

The parties executed the Agreement, referenced by the Circuit Court, on March 16, 1987. In the first paragraph, the Agreement provides as follows: "Patricia Ann Clark, party of the first part does hereby agree to deed one-half (1/2) of her

interest in any recorded Mineral Deeds on record in Collier County, Florida, to Noel D. Clark, Jr., party of the second part." The record is unclear what if any interests Ms. Clark had in any mineral rights and what if any rights she ever conveyed to the Debtor.

In the second paragraph, the Agreement provides as follows:

Noel D. Clark, Jr., party of the second part does hereby agree to deed one-half (1/2) of his interest in any recorded Mineral Deeds on record in Collier County, Florida, dated through December 31, 1986, to Patricia Ann Clark, party of the first part.

Finally, paragraph 7 of the Agreement states "Noel D. Clark, Jr., party of the second part, agrees to pay to Patricia Ann Clark, party of the first part, one-half (1/2) of all royalty monies held by Exxon, upon release of said monies." It appears from the Agreement that the Debtor was to convey both his interests in certain mineral rights as well as his interest in certain Exxon royalties (Exxon Royalties).

It appears that on December 17, 1996, the Debtor also caused the following document to be recorded in the official records of Collier County: "Court Ordered Mineral Right and Royalty [sic] Transfer" (Court Ordered Transfer), which was signed by the Debtor individually and as a president of State Wide Abstract & Land Services, Inc. (State Wide Abstract). (Ex. 1 of Pl.). The Court Ordered Transfer is a three-paragraph document, which states in relevant part as follows:

Upon the recording of any mineral rights purchased by Noel D. Clark, Jr., or his company Satewide [sic] Abstract and Land Services, Inc., anywhere in Collier County Florida through December 31, 1986. Patricia Ann Clark automatically becomes owner of 50% (fifty percent) of said minerals purchased.

Patricia Ann Clark is also 50% (fifty percent) owner of all monies held by Exxon Corporation in reference to the minerals purchased by Noel D. Clark, Jr. or Statewide Abstract and Land Services, Inc.

It is without dispute that during the relevant time, Ms. Clark executed a quit-claim deed on October 9, 1996 and recorded on January 24, 1997, and conveyed to the Defendant certain gas, oil and mineral rights "fully described on attached Exhibit A and made a part hereof" (Ex. 2 of Pl.) (First Deed). The property description is a nineteen-page property description, including this phrase "This transfer includes 100% of my held, stacked or escrowed royalities [sic] and revenues from production since day one of production, forward which is currently being wrongfully held by Exxon and assigns."

Also, it is without dispute that on October 21, 1996, Ms. Clark executed a quit-claim deed and transferred to Ms. Brennan as Trustee of the Family Trust, "all oil gas and mineral rights and royalties described on attached Exhibit A attached hereto and made a part hereof" (Ex. 3 of Pl.) (Second Deed). The Second Deed was recorded on January 27, 1997. The legal description is a four-page legal description. Thereafter, on July 2, 1997, Ms. Brennan, individually and as Trustee of the Family Trust, conveyed by quit-claim deed to the Defendant certain mineral rights "fully described on Exhibit A pages 1–4 attached hereto and made a part thereof" (Ex. 4 of Pl.) (Third Deed). The Third Deed was recorded on June 17, 1999. A comparison of the Second Deed and the Third Deed confirms that Ms. Brennan transferred to the Defendant the same property that Ms. Clark had originally transferred to Ms. Brennan on October 21, 1996. The net affect of the First Deed, the Second Deed and the Third Deed is that all property

was purportedly transferred to the Defendant.

### The Second Set of Transfers: The Subjects of Counts III, IV, and V

It is without dispute that on December 24, 1994, the Debtor individually and as owner of all assets of State Wide Abstract conveyed to Ms. Brennan as Trustee of the Family Trust "mineral rights, Exhibit A, pages 1–4, deeding all mineral rights described on Exhibit A 1–4 attached hereto and made a part hereof" (Debtor 1st Deed) (Ex. 8 of Pl.). The Debtor 1st Deed was recorded on May 12, 1997. Also on December 24, 1994, the Debtor again, individually and as the owner of State Wide Abstract, conveyed to Ms. Brennan, as Trustee of the Family Trust certain property described as "Exhibit A pages 1–12, attached hereto and made a part hereof" (Debtor 2nd Deed) (Ex. 9 of Pl.). The Debtor 2nd Deed was recorded on May 12, 1997. Also on December 24, 1994, the Debtor, individually and as owner of the assets of State Wide Abstract conveyed to Ms. Brennan as Trustee of the Family Trust "Township 52 South, Range 34 East, S ½ NE ¼ SW ¼ NW ¼" (Debtor 3rd Deed) (Ex. 10 of Pl.). The Debtor 3rd Deed was recorded on May 12, 1997.

The three deeds described above: The Debtor 1st Deed, the Debtor 2nd Deed, and the Debtor 3rd Deed were avoided in Adversary Proceeding No. 98–152, by the entry of a Final Judgment entered on April 5, 2000. (Ex. 5 of Pl.). The Debtor 1st Deed, Debtor 2nd Deed and Debtor 3rd Deed were deemed to be void pursuant to 11 U.S.C. § 548(a)(2)(A)(B)(i), 11 U.S.C. § 544(b) and *Fla. Stat.* § 726.105. The named defendant in Adv. Proc. No. 98–152 was Ms. Brennan. This Final Judgment was affirmed on appeal by Order of the District Court entered on March 14, 2002. (Ex. 6 of Pl.).

On December 23, 1994, the Debtor individually, and again as the owner of the assets of State Wide Abstract, executed a quit-claim deed (Debtor 4th Deed) (Ex. 11 of Pl.) purporting to convey to Ms. Brennan as Trustee of the Family Trust the following:

Twnship 61 SO, Range 34 East Sect 34. OR. Acre Net Min. Acres ... Well 11 ... Well 10 ... Well 9 ... Well 8 ... deeding all stacked, unpaid, royalties or revenues from production, including all royalties due that were wrongfully or mistakenly paid out by Exxon after Noel D. Clark, Jr. or Statewide purchased the previous owners mineral rights. This Claim is made from the day production was made, "the very first runs" from all deeds purchased from the former mineral owners to State Wide Abstract and Land Services, Inc. and or to Noel D. Clark, Jr., up through the day of transfer by Noel D. Clark, Jr. of said fractional interests.

The Debtor 4th Deed was recorded on February 7, 1995. And, on December 24, 1994, the Debtor executed a quit-claim deed (Debtor 5th Deed) (Ex. 12 of Pl.) to Ms. Brennan as Trustee, that conveyed interest in the legal description of some land in Township 61, South Range 34, East Section 34. The Debtor 5th Deed was recorded on February 7, 1995. The Debtor 4th Deed and the Debtor 5th Deed were also found to be void by entry of a Final Judgment in Adv. Proc. No. 98–152 pursuant to 11 U.S.C. § 544(b) and *Fla. Stat.* § 726.106. (Exs. 5 and 6 of Pl.).

### The Third Set of Transfers: The Subject of Count V

On December 1, 1994, the Debtor executed an Assignment (First Assignment) to Ms. Brennan as Trustee of the Family

Trust all of his right, title, interest, and benefit to in and under the "Final Judgement" [sic] received by the Debtor on March 16, 1993 in case number 89–6534. (Ex. 13 of Pl.). The First Assignment was recorded in the Official Records of Collier County on February 7, 1995.

On July 2, 1997, Ms. Brennan as Trustee of the Family Trust executed an Assignment (Subsequent Assignment) of the First Assignment to the Defendant. The Subsequent Assignment, while it was recorded in Collier County, Florida on June 17, 1999, carries the legend "Recorder's memo: Legibility of Writing. Typing or Printing unsatisfactory in this document when received." (Ex. 14 of Pl.). The First Assignment was also avoided in Adv. Proc. No. 98–152 by the entry of the Final Judgment, pursuant to 11 U.S.C. § 544(b) and *Fla. Stat.* § 726.106, as affirmed by the District Court.

### The Fourth Transfer: The Subject to Counts III, IV, V, and VI

The final transfer at issue is the execution of a quit-claim deed (the Brennan Deed) dated July 2, 1997 to the Defendant. The Brennan Deed was recorded on June 17, 1999. The Brennan Deed purports to transfer the same property as referenced in the First Deed, which already transferred from Ms. Clark to the Defendant the subject property.

These are all of the transfers which have their origin from the initial transfer made by the Debtor in favor of his ex-wife Ms. Clark, ostensibly pursuant to the Agreement entered into as part of the dissolution of marriage proceeding. As noted earlier, the Agreement was incorporated, adopted and approved by the Circuit Court, who entered the Final Judgment of dissolution of marriage between the Debtor and Ms. Clark.

The majority of the Trustee's Counts can be disposed of based upon the entry of the Final Judgment in Adv. Proc. No. 98–152. As stated earlier, Counts III and VII were dismissed by separate Order of this Court. Counts IV and V involve the five deeds executed by the Debtor to Mr. Brennan and the First Assignment, all of which have been avoided by the entry of the Final Judgment in Adv. Proc. No. 98–152. Therefore, as Counts IV and V relate to these five transfers, the law of the case is that these transfers have been avoided and is therefore res judicata as against the Defendant. A final judgment shall be entered in favor of the Trustee and against the Defendant. As to Counts IV, V, and VI, as they relate to the transfer as evidenced by the Brennan Deed, the avoidance of this transfer is academic. This is so because the Brennan Deed purports to transfer the same property as evidenced in the First Deed. Case law is clear that one cannot transfer something that one does not own. Inasmuch as the First Deed was executed and recorded before the Brennan Deed, the Defendant was already, if deemed to be found, in possession of the property. Therefore, judgment shall be entered in favor of the Trustee and against the Defendant as to Counts IV, V, and VI. Finally, since it has been found that the First Assignment was avoided, the Subsequent Assignment is also void and therefore, Count V as it relates to the Subsequent Assignment shall be entered in favor of the Trustee and against the Defendant.

This leaves for consideration Counts I and II. The Trustee at the final evidentiary hearing announced that she was withdrawing Count II, therefore, final judgment shall be entered in favor of the Defendant and against the Trustee. This leaves the remaining claim asserted by the Trustee in Count I.

The entire thrust of the attack on these transfers is generated by the initial transfer which according to the Trustee, was legally ineffective to effectuate a transfer of oil, gas and mineral rights under the applicable legal principles, which govern the perfection of transfers of interest involved in the present controversy. Thus, it is evident if the Trustee prevails on the initial attack of the transfer between the Debtor and his ex-wife, Ms. Clark, pursuant to the Agreement incorporated in the Final Judgment; none of the subsequent transfers are enforceable.

The threshold question in this matter is whether or not the Debtor effectively transferred his interest in certain mineral rights located in Collier County, Florida to Ms. Clark by virtue of the Final Judgment, entered in their dissolution proceeding, as recorded and by virtue of the Court Ordered Transfer.

■ In Florida, there are two circumstances where a final judgment entered in a dissolution proceeding may operate as a transfer of title to real property. The first is by statute as set forth in Florida Statute § 61.075(4), which provides that upon the recordation of a judgment, the same shall have the effect of a duly executed instrument of conveyance. *Fla. Stat.* § 61.075(4). However, this statute was not enacted until 1994 and cannot be applied retroactively. *Hadden v. Cirelli*, 675 So.2d 1003 (Fla. 5th DCA 1996), *citing Arrow Air, Inc. v. Walsh*, 645 So.2d 422 (Fla.1994). The second circumstance is set forth in Florida Rule of Civil Procedure 1.570, entitled "Enforcement of Final Judgments," which states that if a judgment is for a conveyance of real or personal property, once it is recorded, the judgment shall have the same effect as a duly executed conveyance. Fla.R.Civ.Proc. 1.570.

The case at hand is similar to the facts in the *Hadden* case. In *Hadden*, a husband and wife divorced and the judgment (1) incorporated a "Property Settlement Agreement" whereby the husband agreed to convey to his soon to be ex-wife certain properties and (2) ordered and directed the husband to convey the property to the ex-wife. *Hadden*, 675 So.2d at 1004. The court in *Hadden* determined that the judgment itself was not subject to *Fla. Stat.* § 61.075(4) since that statute was not effective until 1994, or some sixteen years after the entry of the judgment and that the judgment was not self-executing, as is necessary under Fla.R.Civ.P. 1.570.

■■ In the case at hand, the Final Judgment "adopted and approved" the Agreement and the parties were "*ordered* to comply with its terms" (emphasis supplied). Turning to the Agreement itself, it likewise states that the parties "*agree* to deed ..." (emphasis supplied). This language is not self-executing and instructed the Debtor to convey to Ms. Clark his interest in any mineral deeds. The next step in this analysis is to determine whether or not the Debtor subsequently executed a deed to transfer his interests to Ms. Clark. It is the position of the Defendant that the Court Ordered Transfer is the document that the Debtor utilized to convey to Ms. Clark his mineral rights. A review of the Court Ordered Transfer on its face reveals that it is ineffective to transfer mineral rights.

■ At a minimum, a document that attempts to convey real property must describe or identify the land affected. *Mendelson v. Great Western Bank*, 712 So.2d 1194 (Fla. 2d DCA 1998); *Mitchell v. Thomas*, 467 So.2d 326 (Fla. 2d DCA 1985). The Court Ordered Transfer, recorded on December 17, 1996 merely states that "upon recording of any mineral rights ... anywhere in Collier County

Florida through December 31, 1986 ... Patricia Ann Clark automatically becomes owner of 50% ...." By the time the Court Ordered Transfer was recorded, in the year 1996, the Debtor would have known at a minimum the OR book and page number of any mineral interests he had at that time. There is no property description nor is there any listing of the OR book and page number to identify any mineral interests that the Debtor had when the Court Ordered Transfer was recorded. This Court is satisfied that this document, the Court Ordered Transfer, on its face is ineffective to transfer mineral rights from the Debtor to Ms. Clark. Unfortunately, the analysis does not end with this proposition. It is clear that the Debtor not only intended to convey to Ms. Clark his interest in certain mineral rights, but also his interest in the Exxon Royalties. As noted earlier, the Debtor in the Court Ordered Transfer attempted to transfer "50% (fifty percent) owner of all monies held by Exxon Corporation in reference to the minerals purchased by Noel D. Clark, Jr. or Statewide Abstract and Land Services, Inc."

It is unequivocal under Florida law that unaccrued royalties, pertaining to future production of minerals are real property interests, while accrued royalty interest in minerals that have been produced and severed from the land are personalty. *Terry v. Conway Land, Inc.*, 508 So.2d 401 (Fla. 5th DCA 1987). When interests are severed from the land, the rents or royalties under the lease are characterized as personal property. *Miller v. Carr*, 137 Fla. 114, 188 So. 103 (1939). In this instance, the Debtor attempts to convey to Ms. Clark his interest in the "Exxon royalties." Transfer of personal property or chattel, to be valid and properly perfected, must be in compliance with Article 9 of the UCC, as adopted in Florida pursuant to Fla. Stat. Ch. 679. *See Octagon Gas Systems v. Rimmer (In re Meridian Reserve, Inc.)*, 995 F.2d 948 (10th Cir.1993). Based upon the foregoing authority, the Debtor could not effectively transfer his interests in the "Exxon royalties" by deed, or in this instance, by virtue of the Court Ordered Transfer.

This Court initially raised its concern at trial that Ms. Clark was an indispensable party to this Adversary Proceeding. In the case of *Sparling v. Boca Raton Land Development, Inc.*, 438 So.2d 413 (Fla. 4th DCA 1983), the court essentially determined that in a quiet title action, the intermediary transferors were not necessary parties since the current action was to determine the rights between the current landowner and the subsequent landowner. In this instance, Count I is essentially an action to quiet title. The Trustee is requesting that this Court find that the transfers from Ms. Clark to the Defendant are ineffective, since Ms. Clark cannot transfer title to something she does not own. Although, as stated in the *Sparling* decision, it would have been "better practice" to compel the joinder of all parties claiming an interest in the subject land, it was not necessary.

In the present instance, Ms. Clark has no interest in the present controversy because she has voluntarily divested herself of any interest in the subject property. The fact that the transfers by her to the Defendant and to the Family Trust are determined to be ineffective is of no consequence and a decision in this matter in no way impacts her substantive rights. For these reasons, this Court is satisfied that its initial concerns regarding the joinder of Ms. Clark have been satisfied and she is not an indispensable party.

In light of the foregoing, this Court is satisfied that the Trustee has met her

burden under Count I. This Court finds that the first alleged transfer from the Debtor to Ms. Clark, in the form of the recordation of the Court Ordered Transfer, is not a valid transfer of his mineral rights, thus any subsequent transfers of the same subject matter by Ms. Clark to the Defendant and to the Family Trust, and from the Family Trust to the Defendant are also invalid and unenforceable.

A separate Final Judgment shall be entered in accordance with the foregoing.